Filed 11/12/13  In re Julienne B. CA2/7

# NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

## IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## SECOND APPELLATE DISTRICT

## DIVISION SEVEN

| | |
|---|---|
| In re Julienne B. et al., Persons Coming Under the Juvenile Court Law. | B245265 |
| | (Los Angeles County Super. Ct. No. CK91713) |
| LOS ANGELES COUNTY DEPARTMENT OF CHILDREN AND FAMILY SERVICES,<br><br>        Plaintiff and Appellant,<br><br>        v.<br><br>ALEXIS K.T. et al.,<br><br>        Defendants and Appellants. | |

APPEALS from orders of the Los Angeles Superior Court, Mark A. Borenstein, Judge.  Affirmed in part and reversed in part.

John F. Krattli, County Counsel, James M. Owens, Assistant County Counsel, Jacklyn K. Louie, Principal Deputy County Counsel, for Plaintiff and Appellant.

Linda Rehm, under appointment by the Court of Appeal, for Defendant and Appellant, Alexis K.T.

Christopher R. Booth, under appointment by the Court of Appeal, for Defendant and Appellant, S.B.

_____

Alexis K.T. (Mother) and S.B. (Father), the parents of 16-year-old Julienne B. and three other children, appeal from the juvenile court's jurisdiction findings and disposition order declaring Julienne a dependent child of the court under Welfare and Institutions Code section 300, subdivision (c) (serious emotional damage),[1] removing the child from Father's care and custody and placing her with Mother under the supervision of the Los Angeles County Department of Children and Family Services (Department). The Department cross-appeals from the court's dismissal of the sexual abuse allegations in the dependency petition under section 300, subdivisions (b) (failure to protect), (d) (sexual abuse) and (j) (abuse of sibling), and its dismissal of the petition as to Julienne's 10-year-old sister J.B. We affirm the dismissal as to J.B., reverse the subdivision (c) jurisdiction findings and disposition order regarding Julienne and remand the matter for further proceedings in the juvenile court.

## FACTUAL AND PROCEDURAL BACKGROUND

On February 3, 2012 the Department filed a dependency petition on behalf of Julienne, J.B. and their two brothers (one then 16 years old, the other 15 months old), alleging Father had been sexually abusing Julienne since she was seven years old, including fondling her breasts, digitally penetrating her vagina and forcibly raping her. The petition additionally alleged Mother knew of the sexual abuse and failed to protect Julienne. The Department alleged the ongoing sexual abuse placed all four children at risk of serious harm under section 300, subdivisions (b) and (d). The petition further alleged Julienne's three siblings were at risk that they would be abused or neglected pursuant to section 300, subdivision (j).

Julienne had disclosed instances of sexual abuse by Father to her older brother and several of her friends and described the abuse in detail to police officers who interviewed her following the initial referral of the matter to the Department through its child abuse hotline. She confirmed the abuse in sessions with the Department's investigator and

---

[1] Statutory references are to the Welfare and Institutions Code unless otherwise indicated.

2

social workers and to mental health professionals, providing consistent descriptions of Father's improper actions. Father denied the allegations. Mother also denied any sexual abuse of Julienne or her younger sister had occurred.

The children were detained from Father and Mother and then released to Mother once the Department could verify Father had moved out of the family home. By March 31, 2012 Julienne had recanted her abuse charges, explaining she was angry with Father, who was very strict and disapproved of her clothing, dating boys and use of social media late at night; she was also upset by the continuing arguments between Mother and Father about their increasingly desperate financial situation following the failure of the family business (a donut shop). Mother reported to the dependency investigator she had examined Julienne's journal after the children had been detained and found no mention at all of sexual abuse, only Julienne's notes that she hated Father and thought her parents did not belong together. Mother believed Julienne was fabricating the sexual abuse allegations to force Father out of the home. Father described himself as a conservative, strict Asian parent and attributed Julienne's false charges to her anger at his attempts to discipline her and control her behavior by setting rules.

At the jurisdiction hearing held over several days in September 2012, the Department introduced into evidence its detention report dated February 3, 2012 with attachments including the police reports made following the initial sexual abuse allegations, its jurisdiction/disposition report dated March 28, 2012 and a March 13, 2012 report of forensic interview of Julienne by Dr. Lydia Joseph-Hernandez, a clinical psychologist affiliated with Los Angeles County-University of Southern California Medical Center. The Department also submitted a DVD and transcript of the interview. All of this material predated Julienne's recantation on March 31, 2012. Finally, the Department introduced an interim review report dated May 7, 2012, which attached a multidisciplinary assessment team (MAT) report. The Department's position was that Julienne's original charges of sexual abuse were true and her retraction the result of pressure and lack of support from Mother.

3

Julienne, called by Father, was the only witness at the hearing. She testified in chambers, yet again stating the abuse allegations were not true and insisting no one had coached her or encouraged her to recant the charges. She explained her desire for more freedom in her personal life, her frustration with Father's strictness and her unhappiness with her parents' arguing led her to research what she could do to use against Father. One of her friends told her about another girl who had been raped by her stepfather, which gave Julienne the idea of making the sexual abuse allegations that precipitated the dependency petition. She subsequently learned the consequences of her false allegations were far more serious than she had anticipated and was now telling the truth.

After the close of evidence and argument of counsel on September 21, 2012, the court ruled the Department had not met its burden of proof with respect to the section 300, subdivisions (b), (d) and (j) counts. The court explained, after viewing the DVD recording of her forensic interview, which occurred several days before she recanted, and observing Julienne's demeanor during her live testimony and while in court as counsel and the court discussed what had or had not occurred, it found her to be "exceptionally intelligent, but manipulative and immature. . . . I think based on the evidence and burdens of proof that Julienne concocted a plan that included the most violent, offensive and repulsive allegations one can make against a parent, especially by a daughter against a father. And I don't believe that any of these allegations were true." The court determined the statements Julienne made during the forensic interview were not believable, noting her unemotional, matter-of-fact demeanor when describing years of alleged sexual abuse by her father. And it emphasized that, when still asserting in the recorded interview that Father had raped and otherwise violently abused her for years, Julienne showed no anger or disgust toward Father and no desire to have him sent to prison or even kept away from her or her younger sister.

Although dismissing the three counts alleged by the Department in its section 300 petition, the court on its own motion found, based on the evidence presented during the hearing, that Julienne was suffering from severe emotional damage, as evidenced by her

4

severe anxiety and aggressive behavior toward Father, and that Father and Mother had failed to recognize the substantial need for appropriate mental health care for Julienne. Accordingly, the court ordered the petition amended to conform to proof to add a new section 300, subdivision (c), allegation and sustained the amended petition as to Julienne. The petition as to J.B. and the other two siblings was dismissed.

At a contested disposition hearing on October 26, 2012 both Father and Mother requested that Father be allowed to return to the family home. In addition, Father objected to the requirement in the proposed case plan that he participate in individual counseling and a parenting class since the sustained allegation related to Julienne's mental health, not disciplinary issues. He did not object to participating in conjoint counseling with Julienne. Julienne's counsel joined the Department's recommendation that Father not be allowed to return home at that time and that family members engage in both individual counseling and conjoint counseling before reuniting "to make sure that the family dynamics are not such that something like this would happen again."

The court acknowledged that, by keeping Father out of the house, it was "doing exactly what Julienne had planned inappropriately to do, and that is disturbing." But the court emphasized its belief that, "even though she has some measure of satisfaction for her ill-conceived plan, it did uncover deeper concerns that I think need to be addressed." Accordingly, the court ordered Julienne removed from the custody of her father and returned to her mother under the supervision of the Department. Mother was ordered to participate in individual counseling to address case issues and conjoint counseling with Julienne. Father was ordered to participate in individual counseling and conjoint counseling with Julienne, but not parenting class; his visitation with Julienne was to be monitored. The court additionally ordered family preservation services.[2]

---

[2] On October 8, 2013 the juvenile court terminated the home-of-parent-mother order and placed Julienne with both parents under the supervision of the Department. We take judicial notice of the court's October 8, 2013 minute order pursuant to Evidence Code sections 452, subdivision (d), and 459.

5

Father and Mother each filed timely notices of appeal from the jurisdiction and disposition findings and orders under section 300, subdivision (c). The Department filed a cross-appeal challenging dismissal of the sexual abuse counts alleged under section 300, subdivisions (b) and (d), as to Julienne and J.B. and subdivision (j) as to J.B., and the dismissal of the dependency petition as to J.B.

## DISCUSSION

1. *The Juvenile Court Acted Within Its Discretion in Dismissing the Sexual Abuse Counts After Finding Julienne's Recantation Credible*

The Department's reports and Dr. Joseph-Hernandez's forensic interview of Julienne, introduced into evidence at the jurisdiction hearing, would reasonably support a finding that Julienne's accusations of sexual abuse by Father were credible and her recantation false, the result of pressure from Mother and concern for the welfare of her younger siblings if Father were removed from the family home. As the Department argues, her statements regarding the alleged sexual abuse were highly detailed and consistent over time whether she was speaking to friends, law enforcement officers, the social worker or forensic psychologist, all of whom found her believable. Yet the juvenile court, the sole finder of fact, saw and heard Julienne's testimony denying any abuse had occurred and explaining why she had lied; the court found her recantation credible and accepted her testimony as true. It is not within our province to substitute our evaluation of Julienne's credibility for that of the juvenile court. (*In re Ana C.* (2012) 204 Cal.App.4th 1317, 1329 ["[t]hat the dependency court reasonably could have assessed [the minor's] credibility less favorably or that our court could reasonably make a different assessment of credibility is not sufficient grounds for reversal"]; see *In re Savannah M.* (2005) 131 Cal.App.4th 1387, 1393 [appellate court defers to juvenile court on all issues of credibility]; *In re Tania S.* (1992) 5 Cal.App.4th 728, 733-734 [same]; see generally *People v. Albillar* (2010) 51 Cal.4th 47, 60 [reviewing court neither reweighs evidence nor reevaluates a witness's credibility].)

To be sure, if a witness's testimony is physically impossible or patently false on its face, we are not obligated to accept it. (*In re Ana C., supra*, 204 Cal.App.4th at p. 1329;

6

see *People v. Thompson* (2010) 49 Cal.4th 79, 124 ["[t]he standard for rejecting a witness's statements on this ground requires ""'either a physical impossibility that they are true, or their falsity must be apparent without resorting to inferences or deductions'""]; see generally *People v. Elliott* (2012) 53 Cal.4th 535, 585 ["[u]nless it describes facts or events that are physically impossible or inherently improbable, the testimony of a single witness is sufficient to support a conviction"].)  Here, although the evidence marshaled by the Department in support of the cross-appeal tends to impeach the credibility of Julienne's denial of any abuse by Father,  "impeachment is not impossibility."  (*In re Ana C.*, at p. 1329.)  Julienne's explanation of why and how she fabricated the charge of sexual abuse certainly was not physically impossible, and there is nothing about it that marks it as patently false or even implausible.  The juvenile court's decision to accept her testimony and to dismiss the sexual abuse counts was well within its discretion.[3]

---

[3]     The Department misstates somewhat the appropriate standard of review.  The question before us is not whether substantial evidence supports the juvenile court's decision to dismiss the sexual abuse counts, as the Department contends, but whether the evidence compels a finding in favor of the Department on this issue as a matter of law: When "'the issue on appeal turns on a failure of proof at trial, the question for a reviewing court becomes whether the evidence compels a finding in favor of the appellant as a matter of law.  [Citations.]  Specifically, the question becomes whether the appellant's evidence was (1) "uncontradicted and unimpeached" and (2) "of such a character and weight as to leave no room for a judicial determination that it was insufficient to support a finding."'"  (*Sonic Mfg. Technologies, Inc. v. AAE Systems, Inc.* (2011) 196 Cal.App.4th 456, 466; see generally *Valero v. Board of Retirement of Tulare County Employees' Retirement Assoc.* (2012) 205 Cal.App.4th 960, 965 ["[a]lthough the issue on this appeal has been framed as whether there is substantial evidence in the record to support the trial court's conclusion that [employee] had not met his burden to show a real and measurable connection between his psychiatric disability and his employment, there is a conceptual and substantive distinction within the substantial evidence analysis depending on who has the burden of proof on a particular issue, which party prevailed on that issue and who appealed"].)

2. *The Juvenile Court Abused Its Discretion by Amending the Petition To Conform to Proof Without Providing Mother and Father Advance Notice and an Adequate Opportunity To Be Heard*

a. *Discussion regarding a section 300, subdivision (c), count*

Julienne completed her testimony on the second day of the jurisdiction hearing. No party had any other evidence, and the court pronounced the evidence closed.

Counsel for the Department urged the court to sustain the sexual abuse allegations notwithstanding Julienne's complete recantation and insistence that no abuse had occurred. Arguing next, Jennifer Lorson, counsel for J.B. and the other two siblings, asked the court, "How can we guaranty that my clients are going to be safe in the home? If the court takes the position that these are lies, then how do I protect my children from this yet happening again and being pulled out? [¶] . . . [¶] Now, my children are at grave risk of being detained again if she decides he's too strict again. And they get all detained again." The solution Ms. Lorson proposed was to amend the petition to conform to proof to add a new subdivision (b) (failure to protect) or subdivision (c) (serious emotional damage) count. Responding to that suggestion, the court asked how it would amend if it were to conclude from the videotaped forensic interview and the MAT assessment that Julienne had "a serious emotional numbing and persistent avoidance such that her conduct and her mental health puts the children at risk." Ms. Lorson suggested a new subdivision (b) count, alleging the parents did not address the needs of Julienne adequately.[4]

The court initially expressed skepticism, noting "I have limited jurisdiction. It's not a family court, it's a dependency court. I can't just say, oh, I think they need counseling, which they do, whatever the outcome, and just order counseling. I mean I have to find a jurisdictional basis to find the children are subject to [section] 300." Continuing with the theme presented by Ms. Lorson, Julienne's counsel, although

---

[4] Ultimately the court and counsel recognized that section 300, subdivision (b), does not provide for jurisdiction based on emotional harm or damage. (*In re Daisy H*. (2011) 192 Cal.App.4th 713, 718.)

emphasizing she could not argue the sexual abuse counts should be sustained because her client's position was to the contrary, agreed the family needed services. "Julienne is adamant that it didn't happen. I don't think anyone could say that they don't need services and that there's not something abusive going on in this home, whether it's sexual abuse or some other kind of abuse. . . . I can't argue for it to be sustained because my client wishes for it to be dismissed, but I can't argue for dismissal because I don't believe it would be safe for my client to have this entire petition dismissed."

Father's counsel acknowledged the court had the power under appropriate circumstances to amend a petition to conform to proof—giving as an example changing the details of a domestic violence count from hitting to slapping. But Father's counsel argued that a change from a charge of sexual abuse to failure to address the emotional problems of the child required advance notice to allow Father and Mother to present different evidence regarding what they did or did not do on that issue.

After further argument, including the Department's counsel's request that the court amend to conform to proof by including a subdivision (c) count if it did not find the evidence sufficient to sustain the sexual abuse counts actually alleged in the petition, the court tentatively concluded, "although not pled, the evidence amply shows that the parents failed to, in the words of Welfare and Institutions Code section 300(c), to recognize that she was suffering from emotional injury evidenced by anxiety and what I can only characterize as aggression toward others, primarily her father, and that as a result of the parents failing to take steps to address that emotional damage, she was injured and so were her siblings."[5] The court continued the jurisdiction hearing for 10 days to permit counsel to confer with their clients regarding its tentative decision.

_____

[5] Following the court's tentative ruling, counsel for the Department reminded the court that a sustained section 300, subdivision (c), count did not provide a basis under subdivision (j) for jurisdiction over the siblings. (See § 300, subd. (j) [court may adjudge child a dependent of the court if "[t]he child's sibling has been abused or neglected as defined in subdivision (a), (b), (d), (e), or (i), and there is a substantial risk that the child

9

At the continued jurisdiction hearing counsel for Mother and Father argued the notice for the putative subdivision (c) count was inadequate and the evidence as presented insufficient to demonstrate Julienne was suffering from severe emotional damage caused by the parents' conduct. As discussed, following further argument from counsel for the Department and Julienne, the court dismissed the subdivision (b), (d) and (j) counts, and amended the petition to conform to proof and sustained the newly drafted subdivision (c) count.

> b. *The addition of a new and different basis for asserting dependency jurisdiction after the close of evidence prejudiced Father and Mother by depriving them of fair notice and an opportunity to respond to the charge*

A juvenile court may amend a dependency petition to conform to the evidence received at the jurisdiction hearing to remedy immaterial variances between the petition and proof. (§ 348; Code Civ. Proc., § 470.) However, material amendments that mislead a party to his or her prejudice are not allowed. (Code Civ. Proc., §§ 469-470; *In re Andrew L.* (2011) 192 Cal.App.4th 683, 689.) "Given the haste with which petitions are sometimes drafted . . . , the ability to amend according to proof plays an important role in the overall dependency scheme. If a variance between pleading and proof—to use the traditional term of art from civil law [citation]—is so wide that it would, in effect violate due process to allow the amendment, the court should, of course, refuse any such amendment. . . . [¶] The basic rule from civil law, however, is that amendments to conform to proof are favored, and should not be denied unless the pleading as drafted prior to the proposed amendment would have misled the adversarial party to its prejudice." (*In re Jessica C.* (2001) 93 Cal.App.4th 1027, 1041-1042 (*Jessica C.*); accord, *In re David H.* (2008) 165 Cal.App.4th 1626, 1640 ["[o]nly if the variance between the petition and the proof offered at the jurisdictional hearing is so great that the parent is denied constitutionally adequate notice of the allegations against him or

will be abused or neglected, as defined in those subdivisions"]. The court acknowledged the petition as to Julienne's three siblings would be dismissed.

her should a juvenile court properly refuse to allow an amendment to conform to proof"].)

In *In re Andrew L, supra*, 192 Cal.App.4th 683 the court held it was not prejudicial error to conform the petition to proof by striking entirely a section 300, subdivision (a), count, as well as the specific allegation of a diagnosis of a subdural hematoma caused by trauma in the subdivision (b) count, when the remaining subdivision (b) allegations that the child was at substantial risk of serious physical harm or illness were proved. (*Id.* at pp. 689-690.) In *In re David H., supra*, 165 Cal.App.4th 1626 the court held a petition under section 300, subdivision (a), that alleged the child had suffered serious physical harm inflicted nonaccidentally by his mother could properly be amended to conform to the proof presented at the hearing that the child faced a current substantial risk of harm if returned to the mother's custody. (*Id.* at pp. 1644-1645.)[6] In *Jessica C., supra,* 93 Cal.App.4th 1027 the court held it was error for the juvenile court to refuse to permit an amendment that modified the description of the sexual abuse by substituting the word "touching" for "penetrating" the child's vagina. (*Id*. at p. 1042.) Thus, in each of these published decisions endorsing a liberal rule for allowing amendments to conform to proof, the gravamen of the dependency petition remained the same. Unlike the case at bar, in none did the proposed amendment effect a fundamental change in the harm to the child or the parental misconduct alleged. (Cf. *In re Man J.* (1983) 149 Cal.App.3d 475, 481 ["the juvenile court has discretion to permit amendment of a juvenile court wardship petition to correct or make more specific the factual allegations supportive of the offense charged when the very nature of the charge remains unchanged"].)

_____

[6]     Although ruling it would have been permissible on the record before it to amend the petition to conform to the proof presented of a current risk of substantial harm to the child, the court in *In re David H., supra*, 165 Cal.App.4th 1626 held past infliction of serious physical harm was sufficient to establish jurisdiction under section 300, subdivision (a), whether or not there was also proof of a current risk of harm. (See *In re David*, at pp. 1641-1644.)

11

Here, in contrast to the cited cases, it is impossible for us to reconcile the juvenile court's radical change in the basis proffered for dependency jurisdiction with Mother's and Father's fundamental right to notice and a fair opportunity to respond to the actual grounds upon which the petition was sustained. (See *In re Wilford J.* (2005) 131 Cal.App.4th 742, 751 ["a parent whose child may be found subject to the dependency jurisdiction of the court enjoys a due process right to be informed of the nature of the hearing, as well as the allegations upon which the deprivation of custody is predicated, in order that he or she may make an informed decision whether to appear and contest the allegations"]; *In re Justice P.* (2004) 123 Cal.App.4th 181, 188 ["[d]ue process requires that a parent is entitled to notice that is reasonably calculated to apprise him or her of the dependency proceedings and afford him or her an opportunity to object"]; *In re C.P.* (1985) 165 Cal.App.3d 270, 271 [due process requires that parents be afforded notice and an opportunity to be heard at a jurisdiction hearing]; see generally *Nickolas F. v. Superior Court* (2006) 144 Cal.App.4th 92, 117-118 [juvenile court safeguarded parent's rights to procedural and substantive due process by providing him notice and an opportunity to be heard, including the right to present evidence and to confront witnesses].) Although Julienne's mental health and possible emotional problems were discussed in the various reports submitted by the Department, Mother and Father had no notice evidence should be presented concerning (a) the nature and severity of any emotional damage she may be suffering;[7] (b) Father's or Mother's responsibility, if any, for the initial onset of such emotional damage; or (c) their responsibility, if any, for Julienne continuing to suffer emotional damage because they minimized or denied the seriousness of it or refused to seek appropriate care for her mental suffering. (See generally *In re Brison C.* (2000) 81 Cal.App.4th 1373, 1381-1382 [when a child is well-

---

[7]    Section 300, subdivision (c), provides, in part, a child may be adjudged a dependent child of the juvenile court if she "is suffering serious emotional damage, or is at substantial risk of suffering serious emotional damage, evidenced by severe anxiety, depression, withdrawal, or untoward aggressive behavior toward self or others, as a result of the conduct of the parent or guardian . . . ."

adjusted except for a deep fear or dislike of one parent, the court lacks a basis for assuming jurisdiction under § 300, subd. (c), even when parents have subjected the child to a rancorous family law dispute]; *In re Alexander K.* (1993) 14 Cal.App.4th 549, 557 ["[T]he parental conduct branch of subdivision (c) seeks to protect against *abusive* behavior that results in severe emotional damage. We are not talking about run-of-the-mill flaws in our parenting styles—we are talking about abusive, neglectful and/or exploitive conduct toward a child which causes any of the serious symptoms identified in the statute."].)

Indeed, Presiding Justice Sills writing for the court in *Jessica C., supra*, 93 Cal.App.4th 1027—the case relied upon by the Department to support the juvenile court's addition of a new subdivision (c) count after the close of evidence—condemned as a due process violation the very type of amendment to conform to proof at issue here: "[S]uppose a petition only alleges, under subdivision (d) of section 300, a variety of specific sexual acts perpetrated by a parent, but the trial judge does not find these are true. The county then attempts to amend the petition to allege serious *emotional* damage under subdivision (c) of section 300, based on the idea that any child who would make such allegations, even if false, has obviously been subject to emotional abuse. Such a tactic would be nothing more than a cheap way to establish dependency without giving the parent adequate notice of dependency jurisdiction under an emotional abuse theory." (*Id.* at p. 1042, fn. 14.) We understand the juvenile court's action as a well-meaning attempt to protect Julienne and to provide services to her and her parents, rather than a "cheap tactic." Nonetheless, we agree with the *Jessica C.* court that the amendment to add a subdivision (c) count, first suggested by counsel for Julienne's siblings after the close of evidence that was directed only to sexual abuse allegations, should have been refused. Alternatively, the evidentiary portion of the hearing should have been reopened to allow (after an appropriate continuance) Father and Mother to present evidence to refute the amended allegations.

13

c. *A remand for further proceedings, rather than dismissal of the case, is the appropriate relief on appeal*

On the record before us the jurisdiction findings under section 300, subdivision (c), must be reversed, and the disposition order removing Julienne from Father's care and custody vacated. (*In re David M*. (2005) 134 Cal.App.4th 822, 833; *In re Janet T*. (2001) 93 Cal.App.4th 377, 391.) Given the procedural posture of the case—that is, the failure of the Department, Julienne or Mother and Father to specifically address whether Julienne is properly found a dependent child of the court under section 300, subdivision (c)—we decline Mother's and Father's invitation to dismiss the dependency proceedings at this point. Our conclusion that the amendment to conform to proof should have been refused for lack of adequate notice does not mean the Department cannot try again or that it may not be in Julienne's best interests for her to be removed from the custody of Father. (See *Janet T*., at p. 392.) However, we recognize circumstances may have arising during the pendency of this appeal that could affect the juvenile court's evaluation of any new petition filed by the Department. Accordingly, in any further proceedings on remand the juvenile court should give appropriate weight to Julienne's and the family's current situation.

**DISPOSITION**

The order dismissing the petition as to J.B. is affirmed. The jurisdiction findings and disposition order as to Julienne are reversed and the matter remanded to the juvenile court for further proceedings not inconsistent with this opinion.


PERLUSS, P. J.

We concur:


WOODS, J.                    ZELON, J.

14