[No. D057586. Fourth Dist., Div. One. Feb. 8, 2011.]

In re ANDREW L. et al., Persons Coming Under the Juvenile Court Law.
SAN DIEGO COUNTY HEALTH AND HUMAN SERVICES AGENCY,
Plaintiff and Respondent, v.
MICHAEL L., Defendant and Appellant.

Counsel

Suzanne M. Davidson, under appointment by the Court of Appeal, for Defendant and Appellant.

John J. Sansone, County Counsel, John E. Philips, Chief Deputy County Counsel, and Lisa M. Maldonado, Deputy County Counsel, for Plaintiff and Respondent.

M. Elizabeth Handy, under appointment by the Court of Appeal, for Minors.

Opinion

**McCONNELL, P. J.**—Michael L. appeals orders made at the six-month juvenile dependency review hearing regarding his sons, Andrew L. and Matthew L., granting a motion by the San Diego County Health and Human Services Agency (the Agency) to dismiss count (a) of the Welfare and Institutions Code[1] section 300 petition regarding Matthew and to strike words from count (b) of Matthew's petition. We affirm the orders.

## FACTUAL AND PROCEDURAL BACKGROUND

In February 2008 the Agency petitioned on behalf of infant Andrew on the ground that his mother, Darcy B., abused alcohol and prescription drugs. Darcy had been brought to a hospital just before Andrew was born after a domestic violence incident with Michael. She tested positive for benzodiazepines, her blood-alcohol level was 0.25 percent, and she admitted drinking a pint and a half of vodka. After Andrew's birth, the court ordered him detained in foster care. In June it found the allegations true, ordered Michael and Darcy to comply with their case plans and ordered Andrew placed with Michael and that Darcy would have supervised visits.

Matthew was born prematurely to Darcy and Michael one year later in February 2009. He spent one month in a neonatal intensive care unit (NICU) before going home. Darcy had not complied with her services plan regarding Andrew, and in March 2009 the court terminated her reunification services in Andrew's case and continued his placement with Michael.

---

[1] Statutory references are to the Welfare and Institutions Code unless otherwise specified.

On July 26, 2009, Michael took five-month-old Matthew to a hospital because he was lethargic, had a fever and had blood in his nose. Michael had not taken Matthew for any followup pediatric care or immunizations after his discharge from the NICU. Matthew was filthy when he was admitted to the hospital and appeared not to have been receiving adequate care. Cynthia Kuelbs, M.D., medical director of the Chadwick Center at Rady Children's Hospital, opined he was at risk as a medically fragile infant who had suffered medical neglect.

On July 27, 2009, the social worker went to Michael's home and discovered Darcy with Andrew. Andrew was temporarily removed, but then returned to Michael. Michael later told the social worker that Darcy had cared for Andrew and Matthew about 25 times.

On August 5, 2009, the Agency petitioned on Matthew's behalf under section 300, subdivision (b), alleging he was at substantial risk of serious harm or illness in that he: ". . . was discovered to have a detrimental condition consisting of, but not limited to, pneumonia, dehydration, an elevated white count, and a fluid collection in the right front [parietal] lobe, which detrimental condition is of such a nature as would ordinarily not be sustained except as the result of the unreasonable or neglectful acts or omissions of the parent of the child; the father allowed the mother to care for the child unsupervised while knowing there was a court order for an older sibling, ANDREW, forbidding such contact; the child was filthy and had [a] diaper rash upon admittance to the hospital; the father took the child off an apnea monitor without medical input, and failed to provide follow up medical care for the premature birth and there is substantial risk that the child will suffer serious physical harm or illness."

The court also petitioned on Andrew's behalf under section 387, alleging Michael had violated court orders by allowing Darcy to have unsupervised contact with Andrew on 25 occasions. Both children were detained in foster care.

Dr. Kuelbs reported tests showed Matthew had a subdural fluid collection, which was not present at the time of his birth.[2] She said he may have a metabolic defect, but the hematoma is not related to this disorder and indicates prior trauma. She stated, ". . . Matthew is a fragile infant with multiple medical problems and an unexplained subdural hematoma who has

---

[2] Dr. Kuelbs also referred to the subdural fluid collection as a subdural hematoma.

been neglected medically and from a care standpoint given the filthy nature in which he presented to the emergency department. Should he return to an environment which is unchanged and which does not guarantee that he will have regular and judicious health care, Matthew is at risk for further illness and metabolic crisis which could result in death were he to not be brought to health care immediately."

On August 25, 2009, the Agency filed an amended petition on Matthew's behalf, alleging under section 300, subdivision (a), that he had been discovered to have a subdural fluid collection or hematoma in the right front parietal area which medical providers had stated was indicative of trauma.

On October 29, 2009, the court found the allegations of the petitions true, continued removal from parental custody and ordered reunification services.

Subsequently, because Matthew was not growing normally and magnetic imaging indicated an underlying metabolic disorder, Dr. Kuelbs became less certain that his subdural hematoma had been caused by trauma.

On May 5, 2010, Darcy filed a section 388 petition, arguing the section 300 petition concerning Matthew should be dismissed and he be returned to parental care. The court found she had made a prima facie showing on her motion and granted a hearing.

On May 13, 2010, the Agency moved under section 390, requesting the court dismiss the section 300, subdivision (a) allegation in Matthew's petition because of the change in diagnosis and requesting it delete the language referring to the fluid collection in the right front parietal lobe in the section 300, subdivision (b) allegation. Michael responded, arguing Matthew's petition should be dismissed in its entirety and the Agency be required to file a new petition in order for the court to maintain jurisdiction over Matthew.

At the six-month review hearing on June 1, 2010, Dr. Kuelbs testified she had determined because Matthew has an underlying metabolic problem the fluid collection may not have been caused by trauma. She said he needs a caregiver who is especially attentive to his medical needs. The court also heard testimony from the social workers and from Darcy. The Agency suggested if section 390 were not the proper vehicle to request striking the words referring to the subdural fluid collection in the section 300, subdivision (b) allegation of Matthew's petition, it was making an oral section 388 motion that that language be deleted.

After considering the evidence and counsel's argument, the court granted the Agency's section 390 petition and dismissed the section 300, subdivision (a) allegation in Matthew's petition in the interests of justice. It denied Darcy's section 388 petition to dismiss the section 300, subdivision (b) allegations in Matthew's petition, but deleted language in the subdivision (b) allegations of the petition as requested by the Agency. It continued the children's placement in foster care and continued reunification services.

## DISCUSSION

Michael contends the court prejudicially erred by dismissing the section 300, subdivision (a) allegations in Matthew's petition and striking words from the subdivision (b) allegations in the petition. He argues section 390[3] permits dismissal of an entire petition, but not dismissal of part of a petition after a true finding, and it was improper to strike words from the section 300, subdivision (b) allegations under section 388.[4] He claims he was prejudiced by the court's ruling because he was denied his right to challenge the modified petition. We find no error and affirm.

Article 12 of chapter 2 of part 1 of division 2 of the Welfare and Institutions Code pertains to the modification of juvenile court judgments and orders and includes sections 385 through 390. (*In re Marilyn H.* (1993) 5 Cal.4th 295, 305 [19 Cal.Rptr.2d 544, 851 P.2d 826].) Section 385 provides: "Any order made by the court in the case of any person subject to its jurisdiction may at any time be changed, modified, or set aside, as the judge deems meet and proper, subject to such procedural requirements as are imposed by this article."

Section 348 provides that provisions in the Code of Civil Procedure relating to variance and amendment of pleadings in civil actions apply to

---

[3] Section 390 provides as follows: "A judge of the juvenile court in which a petition was filed, at any time before the minor reaches the age of 21 years, may dismiss the petition or may set aside the findings and dismiss the petition if the court finds that the interests of justice and the welfare of the minor require the dismissal, and that the parent or guardian of the minor is not in need of treatment or rehabilitation."

[4] Section 388 provides in part: "(a) Any parent or other person having an interest in a child who is a dependent child of the juvenile court . . . may, upon grounds of change of circumstance or new evidence, petition the court in the same action in which the child was found to be a dependent child of the juvenile court . . . for a hearing to change, modify, or set aside any order of court previously made or to terminate the jurisdiction of the court. . . . [¶] . . . [¶]

"(d) If it appears that the best interests of the child may be promoted by the proposed change of order, . . . the court shall order that a hearing be held . . . ."

juvenile dependency petitions and proceedings. Amendments to conform to proof are permitted, but material amendments that mislead a party to its prejudice are not allowed. (Code Civ. Proc., §§ 469–470.) Code of Civil Procedure section 473, subdivision (a)(1), provides that a court may allow amendment to a pleading or proceeding to correct a mistake. It also provides: "The court may likewise, in its discretion, after notice to the adverse party, allow, upon any terms as may be just, an amendment to any pleading or proceeding in other particulars . . . ." (Code Civ. Proc., § 473, subd. (a)(1).)

In *In re Jessica C.* (2001) 93 Cal.App.4th 1027 [113 Cal.Rptr.2d 597], the reviewing court held the juvenile court had abused its discretion when, after true findings on original petitions, it denied the social services agency's subsequent petition under section 342 to allow an amendment to conform to proof. The court held the parent would not have been prejudiced by allowing the amendment because he would not have prepared his defense differently if the original allegation had contained the language in the amendment and any variance in the language could not have misled him to his detriment. (*In re Jessica C.*, *supra*, at pp. 1042–1043.) The court stated: "[T]he ability to amend according to proof plays an important role in the overall dependency scheme. If a variance between pleading and proof . . . is so wide that it would, in effect, violate due process to allow the amendment, the court should, of course, refuse any such amendment. [¶] The basic rule from civil law, however, is that amendments to conform to proof are favored, and should not be denied unless the pleading as drafted prior to the proposed amendment would have misled the adversarial party to its prejudice." (*Id.* at pp. 1041–1042, fn. omitted.)

Here, the court did not err by allowing an amendment to Matthew's section 300 petition to delete the allegations under subdivision (a) and to delete 10 words from the allegations under subdivision (b). The amendments conformed the allegations of the petition to proof and did not cause Michael any prejudice. The Agency's written section 390 motion provided all parties with explicit notice of the issues being litigated, and the court conducted a full hearing affording each party the opportunity to be heard. There was no violation of due process. (See *In re Justice P.* (2004) 123 Cal.App.4th 181, 188 [19 Cal.Rptr.3d 801].)

We reject Michael's argument that the entire petition regarding Matthew should be dismissed and the Agency be required to file a new petition or a supplemental petition under section 342 because the Agency would not have filed the original petitions absent the diagnosis of a subdural hematoma caused by trauma. It is speculative to say the petitions would not have been

filed but for that particular allegation. In addition to the allegation about the fluid collection or subdural hematoma, the petition alleged Matthew was at substantial risk of serious physical harm or illness in that he had pneumonia, dehydration, and an elevated white blood count; he was filthy and had a diaper rash; and Michael had taken him off the apnea monitor without medical input, had not provided followup medical care after his premature birth, and had allowed Darcy to care for him unsupervised. The parents had full opportunity to challenge these allegations. The court's findings in this regard were well supported and are now final. Relitigation is barred by the doctrine of res judicata. (*Melinda K. v. Superior Court* (2004) 116 Cal.App.4th 1147, 1156 [11 Cal.Rptr.3d 129].)

■ Moreover, dismissal of a petition under section 390 is allowed only when the court finds the interests of justice and the welfare of the child require dismissal and the parent is not in need of treatment or rehabilitation. (§ 390.) In this case there was no showing that dismissal of the petition would support the interests of justice and Matthew's welfare or that the parents were not in need of treatment. Dismissing the entire petition and requiring the Agency to file a new petition would only delay the proceedings to Matthew's detriment.

Michael's arguments that sections 390 and 388 do not authorize filing petitions as the means to allow amendment of a petition after a true finding place form over substance. (See Civ. Code, § 3528.) Although we have found no explicit authority that directs that either statutory provision must be used to amend a juvenile dependency petition according to proof after a true finding, we agree with the Agency that using section 388 may have been the more straightforward approach in this situation. Section 390 speaks of dismissing an entire petition in the interests of justice and the welfare of the child, while section 388 is a means to notify the court of a change of circumstances or new evidence that may require a change of order in the child's best interests. Here, Dr. Kuelbs's reevaluation of her opinion constituted a change of circumstances and new evidence and the Agency showed Matthew's best interests would be served by deleting the language regarding the subdural hematoma from the petition.

■ Regardless of the vehicle by which the Agency sought to amend the petition, all parties were on notice of the change the Agency was proposing and the juvenile court provided ample opportunity for the parties to fully and fairly litigate the issues and their legal rights in the context of a full hearing. No unfairness or prejudice to Michael resulted.

## DISPOSITION

The orders are affirmed.

Benke, J., and Irion, J., concurred.