Filed 8/21/14  In re I.G. CA5

## NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

## IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## FIFTH APPELLATE DISTRICT

| | |
|---|---|
| In re I.G., et al., Persons Coming Under the Juvenile Court Law. | |
| STANISLAUS COUNTY COMMUNITY SERVICES AGENCY,<br><br>        Plaintiff and Respondent,<br><br>    v.<br><br>JOSE G.,<br><br>        Defendant and Appellant. | F068822<br><br>(Super. Ct. Nos. 516594 & 516595)<br><br>**O P I N I O N** |

### THE COURT*

APPEAL from orders of the Superior Court of Stanislaus County.  Ann Q. Ameral, Judge.

Matthew I. Thue, under appointment by the Court of Appeal, for Defendant and Appellant.

John P. Doering, County Counsel, and Carrie M. Stephens, Deputy County Counsel, for Plaintiff and Respondent.

-ooOoo-

---

\*        Before Gomes, Acting P.J., Kane, J., and Detjen, J.

## INTRODUCTION

Jose G., father, appeals from the juvenile court's order denying his petition pursuant to Welfare and Institutions Code section 388[1] and further order at the conclusion of a review hearing terminating the court's jurisdiction. The orders pertain to father's daughters, I.T.G., now six years old, and I.V.G., now two years old (children). Father argues the juvenile court improperly denied his section 388 petition that sought a reversal of the juvenile court's findings from the jurisdiction hearing. Although the juvenile court denied father's section 388 petition, within a week of the denial, the court dismissed the section 300 proceeding and terminated its jurisdiction over the children. We do not find error and affirm the orders of the juvenile court.

## FACTS AND PROCEEDINGS

### Initial Proceedings

On February 19, 2013, the Stanislaus County Community Services Agency (agency) filed a section 300 petition as to father's two daughters, who were then four years old and eleven months old. The children's mother, J.L. (mother), has an older daughter, J.Z., who was 11 years old when the petition was filed.[2] In February 2013, J.Z. made allegations that father had raped her when she was eight years old. Father was arrested and charged with violating Penal Code sections 269, subdivision (a), and 288, subdivision (b)(1). Mother initially would not agree to keep father away from the children if he was released from jail. Later, mother agreed to not permit father to live in the family home while legal actions proceeded. Based on this information, the petition

---

[1] All further statutory references are to the Welfare and Institutions Code, unless otherwise indicated.

[2] Appellant is J.Z.'s stepfather. J.Z. is not a party to this appeal. She was released to the care of her biological father without court involvement.

alleged that the children were at substantial risk of harm as a result of their parents' failure to supervise or adequately protect them. There was a further allegation that father could not care for the children because he was incarcerated.

The agency recommended the children remain in mother's care under court supervision and be detained from father. The children were detained from father by the juvenile court on February 25, 2013, but placed in mother's custody. Placement with mother was conditioned on the court's admonition to mother that she was not under any circumstances to allow father access to the children.

The report prepared by the agency in March 2013 for the jurisdiction/disposition hearing recommended family maintenance services for mother and reunification services for father. On February 14, 2013, Detectives Beebe and Navarro met at J.Z.'s elementary school because a counselor for sixth grade camp overheard J.Z. say that she was raped by her stepfather when she was eight years old. J.Z. told the detectives that father had taken her to a back room when mother went to the store and put his penis into her vagina. Father only did this once to J.Z. Detective Navarro assisted J.Z. with a pretext telephone call to father. Father denied the incident.[3]

Mother doubted J.Z.'s account because she did not have custody of J.Z. until she was almost nine years old. Also, J.Z. never told mother that father had touched her and mother never saw any inappropriate behavior by father. The report noted J.Z. presented credible information that she had been molested by father. At the time the report was

---

[3] The agency's report was based on the police report. J.Z. gave a detailed account of her recollection of how father raped her. J.Z. described what father said to her during the incident, the rape, the clothes she was wearing, and how father placed his hand over her mouth when she attempted to scream. Even though mother did not believe J.Z., mother told investigators that J.Z. had never made up a story or lied about something big like this before. J.Z. did not tell anyone what had happened sooner because she was scared. J.Z. further reported to the police that prior to this incident, father went into J.Z.'s bedroom at night on more than five occasions and touched her breasts. J.Z. was very upset and cried because appellant denied her allegations during the pretext telephone call.

prepared, the criminal charges against father had been dropped. The agency stated, however, that this did not mean the molestation allegations were false. The agency noted there was no evidence father had molested his own children, but still sought services for the safety of the children.

At the jurisdiction/disposition hearing on May 2, 2013, the juvenile court granted the agency's motion to strike an allegation that appellant could not care for the children because he was incarcerated and submitted the matter on the record. Mother made an offer of proof that she would comply with the order to keep father out of the house and the parties stipulated that would be mother's testimony. The parties further accepted father's offer of proof that he denied J.Z.'s allegations of rape and molestation, J.Z. had always been resentful of father because of his relationship with mother, J.Z. had never liked father, J.Z. wanted to live with her own father, and father believed J.Z.'s allegations were a horrendous fabricated story against him.

The court found the allegations in the petition true by a preponderance of the evidence, and noted there were prior incidents between father and J.Z. before the rape. The court found the children to be dependent children and ordered family maintenance services for mother and reunification services for father.

A status review report was prepared in September 2013. Father was referred to individual counseling and a parenting program. Father participated in individual counseling and insisted on his innocence and desire to reunite with his family. Father stopped attending individual counseling after several sessions because he would not admit sexual abuse. Father did not engage in the parenting program. Father regularly visited the children.

At the review hearing on October 15, 2013, the agency explained that both parents adamantly denied the molestation allegations and recommended continuing services. Father's counsel attacked J.Z.'s credibility, the veracity of the allegations, and the factual basis for the jurisdictional findings. Counsel for the agency replied that father's

4

argument would have been appropriate during the jurisdiction/disposition hearing but that the court had already made its findings and found jurisdiction based on the allegations. The agency's counsel also pointed out that if mother did not believe J.Z., she would be unable to protect the children from father.

The juvenile court observed that it was difficult to send the case out to assessment and to tell father he had to admit he did something inappropriate because of father's right not to incriminate himself. The court was also concerned that if the allegations were true and mother did not believe them, the children were still at risk for the failure of the parents to protect them. The juvenile court noted the case was at a standstill and that jurisdiction could not proceed indefinitely. After further discussion with the parties, the court suggested father have a psychological evaluation to assess the risk, if any, to the children, and that father would not have to admit wrongdoing. The court continued the matter for a psychological evaluation of whether father posed a risk to his children and continued all previous orders.

Father began to participate in the parenting education program. He started classes on August 20, 2013, had several parenting reviews, and participated in two parent-child labs. Father was also observed interacting appropriately with his daughters.

*Psychological Evaluation*

Dr. Joseph L. Hernandez, Ph.D., a licensed clinical psychologist, conducted a psychological examination and evaluation of father. Dr. Hernandez developed and ran a sex offender program for the State of California. Dr. Hernandez evaluated father on December 13, 2013. Dr. Hernandez reviewed the incident report prepared by the police, as well as documents prepared by the agency for the instant action. Dr. Hernandez also had father take several different tests and evaluations. Dr. Hernandez, however, candidly stated in his report that "some of the testing instruments that I might use to assess [father's] risk for sexual re-offense are not appropriate."

5

The tests administered by Dr. Hernandez were: the Bender Visual Motor Gestalt Test to measure organic brain problems through the drawing of designs; the Beck Depression Inventory-II to determine the presence and level of any depressive symptoms; the Beck Anxiety Index designed to identify the presence and severity of any anxiety symptoms; the Thematic Apperception Test used to provide insights into personality functioning and to identify any idiosyncratic thought processes; the Rorschach Inkblot Test to provide insights into personality and perception; the House-Tree-Person Test used to identify insights into personality which can suggest a strong sense of home or family; and the Test of Nonverbal Intelligence-Fourth Edition to determine linguistic or motor skill difficulties.

Dr. Hernandez determined that father did not suffer from any organic brain damage and was organized and coherent. Father had minimal levels of depression and anxiety. Father did not show any bizarre ideation or idiosyncratic thought processes. Father did not suffer from cognitive deficits and had average intellectual capacity.

Dr. Hernandez concluded that father did not show any evidence of pedophilia or any other paraphilia. Dr. Hernandez noted father had no convictions for sexual offenses and he found nothing to suggest father had a sexual appetite for children. Dr. Hernandez further opined that even if he took "at face value the allegations made against [father] as being true, [he] did not find anything in [his] clinical interview, testing, and assessment process with [father] that would suggest that he is a danger to his own children." No specialized tests to measure pedophilia or paraphilia were administered by Dr. Hernandez.

Dr. Hernandez found no sexual deviancy that would prevent father from being able to safely care for his children or to put them at risk of sexual molestation. Dr. Hernandez concluded that appellant did not present a danger to sexually abuse his children.

***Section 388 Petition and Termination of Proceedings***

On January 17, 2014, father filed a section 388 petition seeking termination of the juvenile court's jurisdiction. As new evidence, the petition stated that Dr. Hernandez's psychological assessment showed father presented no risk to his children and does not meet the profile of a sex offender. Father asked the juvenile court to reverse its section 300 findings. Father's counsel checked a box on the petition stating that his client wanted a decision without a hearing.

On January 23, 2014, the court prepared a short written order denying father's petition, finding that the section 388 petition was in effect an appeal from the jurisdictional orders and was untimely. The court further ruled that the finding by the psychologist that father was not presently a risk to his children did not conclusively refute the allegations.

Although the agency continued to believe that the sexual abuse allegations against father were true, based on the Dr. Hernandez's report, the agency recommended that the petition be dismissed because the children were not currently at risk. The social worker cautioned, however, that father "may offend at a time when there is no supervision, as he is alleged to have done" and recommended that father "continue to access sexual abuse counseling in the future." On January 28, 2014, the court found the parents had complied with court-ordered services, returned custody of the children to father, and dismissed the dependency proceedings.

## DENIAL OF SECTION 388 PETITION

Father contends the trial court erred in denying his modification petition because there were new facts that completely undermined the juvenile court's jurisdiction findings. The agency replies this appeal is moot because the dependency for the children was dismissed and the expert opinion of Dr. Hernandez did not constitute new evidence because the opinion was based on the facts that supported the juvenile court's jurisdictional findings.

*General Principles*

7

Any party to a dependency proceeding may petition the court to modify or set aside a prior order on the grounds of change of circumstance or new evidence. (§ 388, subd. (a).) The party must also show the proposed change would promote the child's best interest. (*In re Stephanie M.* (1994) 7 Cal.4th 295, 317 (*Stephanie M.*).) Whether the juvenile court should modify a previously made order rests within its discretion and its determination may not be disturbed unless there has been a clear abuse of discretion. (*Id.* at p. 318.) The appropriate test for abuse of discretion is whether the trial court exceeded the bounds of reason. (*Id.* at pp. 318-319.)

All conflicts in the record must be resolved in favor of the juvenile court's decision and all legitimate inferences indulged in to uphold that decision. (*In re Jason L.* (1990) 222 Cal.App.3d 1206, 1214.) When two or more inferences can reasonably be deduced from the facts, the reviewing court has no authority to substitute its decision for that of the trial court. (*Stephanie M., supra,* 7 Cal.4th at pp. 318-319.) The procedure under section 388 accommodates the possibility that circumstances may change so as to justify a change in a prior order. (*In re Marilyn H.* (1993) 5 Cal.4th 295, 309.)

**Mootness**

Generally, when a court cannot fashion an effective remedy, the appeal is moot. (*In re Pablo D.* (1998) 67 Cal.App.4th 759, 761; *Finnie v. Town of Tiburon* (1988) 199 Cal.App.3d 1, 10.) A related legal doctrine is that an appeal presenting only abstract or academic questions is subject to dismissal as moot. Where a judgment dismissing a dependency action is challenged on appeal, the case is not moot if the purported error is of such magnitude as to infect the outcome of subsequent proceedings or where the alleged defect undermines the juvenile court's initial jurisdictional holding. Such cases are decided on a case-by-case basis. (*In re Joshua C.* (1994) 24 Cal.App.4th 1544, 1547 (*Joshua C.*).) The refusal to address jurisdictional errors on appeal by declaring the case moot has the undesirable result of insulating erroneous or arbitrary rulings from review. (*In re Marquis H.* (2013) 212 Cal.App.4th 718, 724 (*Marquis H.*).)

Father argues that there could be future negative consequences from the juvenile court's original jurisdictional findings. Father, however, fails to clearly articulate what these future negative consequences could be and his argument in this regard appears to be highly speculative. One outcome father sought in his section 388 petition was the dismissal of the dependency action. Because the dependency action was dismissed, father's appeal appears to be moot.[4] We will, however, reach the merits of father's section 388 petition.

*Father's Assertion of New Evidence*

Before the juvenile court can grant a section 388 petition, there must be a prima facie showing of changed circumstances which is often shown by new evidence. Father contends that Dr. Hernandez's psychological evaluation constitutes new evidence that the juvenile court erred in making its jurisdictional findings. We disagree.

Dr. Hernandez's evaluation did not include a finding that there was no merit to J.Z.'s allegations. Dr. Hernandez assumed J.Z.'s allegations were true for the purposes of his evaluation. Dr. Hernandez determined, however, that because criminal charges against father were dropped, that he did not have to evaluate father with assessments specifically designed to measure father's propensity for pedophilia. Dr. Hernandez's testing provided little or no insight into the core issue at the heart of the juvenile court's dependency jurisdiction.

Based on this record, Dr. Hernandez provided a new risk assessment opinion about father, but added no new *evidence* relevant to the juvenile court's jurisdiction over the children. Father, however, did not seek a psychological evaluation until long after the

---

[4] We note that father never appealed from the jurisdiction/disposition hearing. This is in contrast to the other authorities in which an appeal was promptly filed after the disposition hearing. In those cases, the reviewing courts did not find mootness even though the dependency action had later been dismissed. (*Joshua C.*, *supra*, 24 Cal.App.4th at p. 1547; *Marquis H.*, *supra*, 212 Cal.App.4th at p. 724.)

9

juvenile court made its jurisdictional findings.  There was nothing preventing father from obtaining a psychological evaluation prior to the jurisdiction hearing.  He failed to do so until much later.  Even if we were to find that Dr. Hernandez provided new evidence, that evidence could have been made available to the juvenile court at the jurisdiction/disposition hearing, but was not.

An expert's opinion based on evidence that was available at the jurisdiction hearing does not constitute new evidence within the meaning of section 388, subdivision (a).  (*In re H.S.* (2010) 188 Cal.App.4th 103, 105, 108-110 (*H.S.*).)  *H.S.* observed that a rule that allows for the reopening of cases previously decided, simply because a party identifies evidence that it could have presented but did not present at trial, would in large measure vitiate the effects of res judicata.  (*Id*. at p. 108.)

*H.S.* reasoned that although the expert's opinion differed from another expert's trial testimony, both opinions were based on the same evidence and the different interpretation did not constitute new evidence.  The new expert opinion did not rely on any additional evidence.  *H.S.* also noted that with due diligence, the appellant there could have presented the additional expert opinion at trial but failed to do so.  (*H.S., supra,* 188 Cal.App.4th at p. 109.)

Here, as in *H.S.*, the father with due diligence could have presented Dr. Hernandez's expert opinion at the jurisdiction hearing and failed to do so.  This is important because at the time of the jurisdiction hearing, the best available evidence before the juvenile court indicated by a preponderance of the evidence that father acted as a pedophile and that his daughters were at risk.

Father presented a psychological evaluation that assumed he committed the alleged sexual abuse of J.Z.  Dr. Hernandez drew a different conclusion concerning the threat father posed to his own children than did the social workers who initiated the proceedings.  Dr. Hernandez's opinion evidence was not available to the juvenile court at the time of the jurisdiction hearing.  Even at the conclusion of the proceedings, there

10

were differing opinions concerning the threat father posed to his own children. The social worker expressed concern that father could reoffend without supervision and that he should still have access to sexual abuse counseling. This view stood in contrast to Dr. Hernandez's positive view of father.

In his reply brief, father distinguishes *H.S.*, arguing that because the children have been returned to their parents and the dependency action dismissed, "the minors' interests are presumably best served by jurisdictional findings that consider all available evidence." Father does not explain how the interests of the minors would be best served in this case by undoing the juvenile court's jurisdictional findings. In denying the section 388 petition, the juvenile court specifically found that Dr. Hernandez's assessment that father does not presently pose a risk to his own children did not conclusively refute the allegation in the petition.

Dr. Hernandez acknowledged in his report that "some of the testing instruments that [he] might use to assess [father's] risk for sexual re-offense are not appropriate." Although Dr. Hernandez said he was assuming for the purposes of his evaluation that father committed acts alleged by J.Z., he further assumed that father did not commit those acts because criminal charges had been dropped. Dr. Hernandez's incomplete psychological testing of father only added vague details concerning father's general psychological profile without evaluating his actual risk to commit a sexual offense on a minor. Dr. Hernandez's opinion did not constitute new evidence and is in the category of an expert's opinion as discussed in *H.S*. We find *H.S*. dispositive and apply its holding here.

We acknowledge that this was a very difficult case for the parties and the juvenile court. J.Z.'s allegations were serious, and, if true, posed a risk to the safety and well-being of the children. On the other hand, father had a constitutional right to maintain his innocence. Dr. Hernandez's report added very little insight into father's risk to the children. Ultimately, the agency and the juvenile court accepted Dr. Hernandez's opinion

11

that father did not pose a risk to his own children and the dependency action was dismissed.

Under the facts before us, we do not find that father has demonstrated Dr. Hernandez's opinion constituted new evidence or that his opinion undermined the juvenile court's original jurisdictional findings. Father also has not shown how it would be in the best interests of the children to revisit or to undo the juvenile court's jurisdictional findings.[5]

## DISPOSITION

The orders of the juvenile court are affirmed.

---

[5] Father argues in his reply brief that the juvenile court was very uncertain about the veracity of the allegations against him. We disagree with this characterization because the juvenile court expressly noted that Dr. Hernandez's evaluation did not establish that the allegations against father were false. In addition to Dr. Hernandez's evaluation, the prosecutor apparently did not pursue a criminal action against father. On the other hand, J.Z. gave a very detailed account of the rape allegation that included specific details of the offense that included details of the clothes she was wearing at the time. Also, mother told authorities that even though she did not believe J.Z., mother had never known J.Z. to make up a story or lie about something this important.

We further find this case distinguishable from other authorities cited by father. (*In re Brandon C.* (1993) 19 Cal.App.4th 1168, 1172-1174, [ordered remand for new hearing after eyewitness to alleged sexual assault recanted testimony]; *In re Andrew L.* (2011) 192 Cal.App.4th 683, 688-690 (*Andrew L.*) [expert changed opinion that the cause of the child's injuries was intentional but instead was due to a metabolic disorder].) We find *Andrew L.* instructive here. There, parents sought the dismissal of a section 300 petition after the expert changed the diagnosis and the social services agency amended its petition. The court in *Andrew L.* held that other allegations supported the petition, the parents had an opportunity to litigate the newly disputed factual matter at the jurisdiction hearing, and a later attack on the jurisdictional findings was barred by res judicata. (*Andrew L.*, *supra*, 192 Cal.App.4th at pp. 689-690.)

12