Filed 7/3/25; Modified and Certified for Pub. 7/30/25 (order attached)

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION SEVEN

| | |
|---|---|
| In re HUNTER V. et al., Persons Coming Under the Juvenile Court Law. | B339028 (Los Angeles County Super. Ct. No. 24CCJP00129) |
| LOS ANGELES COUNTY DEPARTMENT OF CHILDREN AND FAMILY SERVICES,<br><br>Plaintiff and Respondent,<br><br>v.<br><br>JUSTIN J.,<br><br>Defendant and Appellant. | |

APPEAL from an order of the Superior Court of Los Angeles County, Tiana J. Murillo, Judge. Reversed in part and remanded with directions.

Donna B. Kaiser, under appointment by the Court of Appeal, for Defendant and Appellant.

No appearance for Plaintiff and Respondent.

_____

Justin J. (Father) appeals from a jurisdiction finding and disposition order declaring his children, Hunter V. and B.V., dependents of the juvenile court after the court sustained a petition pursuant to Welfare and Institutions Code section 300, subdivisions (b)(1) and (j).[1] Father contends the court violated his statutory and due process rights to be present at the jurisdiction and disposition hearings, as well as his due process right to adequate notice of the amended allegations in the dependency petition. He further argues the errors were prejudicial. We agree there was prejudicial error and reverse.

## FACTUAL AND PROCEDURAL BACKGROUND

A. *The Dependency Petition and Detention Hearing*

On January 10, 2024 the Los Angeles County Department of Children and Family Services (Department) filed a petition under section 300, subdivisions (b)(1) and (j), alleging Desire V. (Mother) had an extensive history of substance abuse that interfered with her ability to provide regular care and supervision to Hunter and B.V. and Mother left the children in

---

[1] Further undesignated statutory references are to the Welfare and Institutions Code.

the care of the maternal uncle without making an appropriate plan for the children's ongoing care and supervision. The petition also alleged Mother's five older children had previously been declared dependents of the juvenile court and received permanent placement services due to her substance abuse. The petition alleged Father had an extensive criminal history, including convictions for unlawful possession of a firearm, unlawful possession of a controlled substance, domestic abuse, and possession of drug paraphernalia, and he was currently incarcerated on a felony murder charge. The petition alleged Father's criminal history placed the children at risk of serious physical harm.

The Department was unable to reach Father prior to the detention hearing. It reported Father had been incarcerated since early September 2023. The Department social worker attempted to call and visit the facility where Father was in custody but was denied access in part because the social worker had expired credentials. The social worker submitted a request to the detention center to have Father transported to the detention hearing.

At the detention hearing held on January 11, 2024, neither Father nor Mother (who had been arrested in early January) were transported to court for the hearing. The juvenile court directed two attorneys who were at the hearing potentially to represent Father and Mother to serve as friends of the court on their behalf. The court detained the children and ordered monitored visitation for both parents.

B.    *The Jurisdiction Hearing*

Prior to the jurisdiction hearing the Department reported Hunter and B.V. were placed with their maternal aunt and uncle.

3

Mother remained incarcerated after pleading no contest in January 2024 to robbery; she was sentenced to two years in state prison.

Father also remained incarcerated, and the Department social worker was able to reach him by telephone prior to the jurisdiction hearing. Father told the social worker he did not know Mother had left the children with maternal uncle and was surprised she would leave them without indicating where she was going or when she would return. He was angry and hurt by Mother's behavior. Father did not know Mother had been arrested. Father had written to Mother multiple times since he was incarcerated, but he only received one letter from her. Father became emotional and cried while speaking to the social worker. He asked how the children were doing and said he would do anything to get his children back. Father had no concerns about the children being in maternal uncle's care. When asked whether there were other relatives he would consider for placement, Father said he would consider the paternal grandmother, paternal great-grandmother, and his ex-wife (the mother of his older children).

Mother was arraigned on the petition on February 8, 2024. The attorney acting as a friend of the court on behalf of Father stated she had not yet been able to make contact with Father. The juvenile court reviewed Mother's parentage questionnaire in which Mother stated Father was not present at B.V.'s birth, Father did not sign the birth certificate, and the parents were not married when B.V. was born.[2] However, Mother indicated she

---

[2] The record on appeal does not contain Mother's parentage questionnaire for Hunter.

4

and Father were living together at the time of B.V.'s conception and birth and Father held himself out as B.V.'s father. Nonetheless, the court stated that, "without information from dad, I'm not willing to find him presumed today on the basis of this fairly limited information." The court found Father was the alleged father of the children.

The juvenile court set the jurisdiction hearing and Father's arraignment for February 22, 2024. However, neither Mother nor Father was transported to court on that date. Father's absence was due to a hearing in his criminal matter on the same day. The court continued the jurisdiction hearing and arraignment "to give the parents one more opportunity to be in court."

Mother and Father again were not transported to court for the continued hearing on March 25, 2024. The court explained that the courtroom bailiff "represented to the court based on calling downstairs after [the custody bus] arrived that [Father] . . . was a missout because he refused . . . to be transported." The court granted the request of Mother's counsel for a continuance of the jurisdiction hearing, but stated, "You all are aware there is a point at which I have to continue balancing the children's interest to have their matter heard against . . . the parents' right to be present. That is always balanced against the children's interest in having their matter resolved."

The jurisdiction hearing was held on April 12, 2024 without the presence of Mother and Father, who were both incarcerated. Mother's counsel requested a continuance because Mother stated she wanted to participate by teleconference. Counsel for the Department requested a continuance with respect to Father because "we don't have any documentation with [Father's]

5

indication—indicating that he does not want an attorney or if he does want an attorney or if he understands that." The court directed the bailiff to call the facility where Father was housed to find out why he had not been transported. After a break in the hearing the bailiff reported, "I was told by the staff over there at the location where [Father is] housed, they stated he refused [to be transported] because, quote, 'He wasn't able to do shit about it.'" An attorney filling in for the friend of the court assigned to Father reported that counsel had tried multiple times to contact Father but had been unable to reach him.

The court denied the requests for a continuance of the jurisdiction hearing and took Father's arraignment off calendar. The court found notice to both parents was proper and stated, "I am balancing mom's due process interest with the children's right to have the matter heard. . . . Because mom has counsel, and I can be reasonably assured that he can represent her interests in her absence, the request for continuance is denied." The court did not address Father's due process rights or the fact he was not represented by counsel.

After hearing argument from counsel for Mother, the children, and the Department, the juvenile court amended the petition by interlineation to change the allegations that Mother was a "current" abuser of marijuana to state she was a "recent" abuser of marijuana. The court sustained the allegations with respect to Mother as amended by interlineation.

The juvenile court found as to Father that the Department had not met its burden to show that Father's "criminal history in and of itself just automatically puts his kids at risk." However, the court stated, "[T]he evidence supports that dad is incarcerated and is unable to parent his children or otherwise

6

make an appropriate plan here. I think the Department has proven that, and I'm noting—I'm taking into account not just that dad was properly noticed, but the fact he also refused to be transported to court twice." Accordingly, the court struck the language in the allegation against Father and replaced it with "[Father] is incarcerated and is unable to parent his children or make an appropriate plan." The court sustained the allegation as amended.

C.      *The Disposition Hearing*

Mother and Father were not present at the May 10, 2024 disposition hearing. Father was represented by counsel, who requested a finding that Father was the presumed father based on a statement regarding parentage for Hunter filed the day of the hearing. In the statement, Father checked boxes indicating he believed he is Hunter's father and Hunter lived with him from birth until Father's arrest in September 2023. Father wrote he told "[e]veryone" Hunter was his child and that "I was involved in every waking day of my children's lives until my incarceration in 2023." Father provided housing, food, clothes, and all essentials for his children. Father stated the children were bonded to the paternal great-grandmother with whom the family had resided. The juvenile court asked counsel whether Father had "additional information about how he held himself out, the nature of the support he provided, et cetera?" Counsel reiterated Father had provided "essential needs for housing, food, [and] clothing." Mother's counsel joined in the request that Father be found the presumed father, noting Mother had told the attorney that "Father had been involved in the children's lives, had held himself out and had been providing for them as he could

7

throughout their lives." The court declined to grant Father presumed status.

Both Mother's and Father's counsel requested a continuance of the disposition hearing. Mother's counsel explained Mother wished to be present and it was not clear why she had not been transported to court. Father's counsel likewise stated Father wanted to be there, but he had a conflicting criminal court hearing that day. Counsel also noted Father had not submitted a signed waiver of his right to be present. The court declined to grant a continuance, reiterating its earlier statement that it must balance the parents' rights to be present with the children's rights to have the matter resolved.

The juvenile court declared Hunter and B.V. dependents of the court, removed them from Father's and Mother's custody, and ordered reunification services for Father and Mother.[3] Father timely appealed.[4]

---

[3]    Father requests we take judicial notice of the minute orders for the November 21, 2024 six-month review hearing at which the juvenile court found continued jurisdiction was necessary and ordered additional reunification services for the parents. We deny the request because the minute orders are not relevant to our resolution of this appeal.

[4]    On March 27, 2025 the Department filed a letter brief stating it is not a proper respondent because it requested the juvenile court continue the jurisdiction hearing due to Father's absence and did not object to a continuance of the disposition hearing. Mother's counsel and minors' counsel likewise submitted letters stating their clients were not the proper respondents in the appeal.

**DISCUSSION**

A.    *Father's Appeal Is Not Moot*

Father does not challenge the jurisdiction findings as to Mother, and she is not a party to this appeal. Accordingly, we do not disturb the juvenile court's order asserting dependency jurisdiction over Hunter and B.V., or the disposition as to Mother, which she has not separately appealed. (See *In re D.P.* (2023) 14 Cal.5th 266, 283 ["[T]he principle that '[d]ependency jurisdiction attaches to a child, not to his or her parent' [citation] means that "'[a]s long as there is one unassailable jurisdictional finding, it is immaterial that another might be inappropriate."'"].)

Nevertheless, where, as here, "a parent has demonstrated a specific legal or practical consequence that will be averted upon reversal, the case is not moot, and merits review is required." (*In re D.P., supra*, 14 Cal.5th at p. 283.) Father contends the court erred in conducting the jurisdiction and disposition hearings in his absence. Because reversal would require the court to hold a new jurisdiction hearing for Father, thus allowing him to defend against the allegation in the petition, we can grant effective relief, and the appeal is not moot. (*Id.* at p. 277 ["[A] case is not moot where a court can provide the plaintiff with "'effect[ive] relief."'"].)

B.    *The Juvenile Court Violated Father's Due Process Right to Notice of the Amended Allegations Against Him*

"Since the interest of a parent in the companionship, care, custody, and management of his [or her] children is a compelling one, ranked among the most basic of civil rights [citations], the state, before depriving a parent of this interest, must afford [the parent] adequate notice and an opportunity to be heard." (*In re*

9

*B.G.* (1974) 11 Cal.3d 679, 688-689; accord, *In re I.S.* (2021) 67 Cal.App.5th 918, 926-927.) "'[A] parent whose child may be found subject to the dependency jurisdiction of the court enjoys a due process right to be informed of the nature of the hearing, as well as the allegations upon which the deprivation of custody is predicated, in order that he or she may make an informed decision whether to appear and contest the allegations.' [Citation.] 'Notice of the specific facts upon which the petition is based is necessary to enable the parties to properly meet the charges.'" (*In re I.S.,* at p. 927.)

"A juvenile court may amend a dependency petition to conform to the evidence received at the jurisdiction hearing to remedy immaterial variances between the petition and proof. [Citations.] However, material amendments that mislead a party to his or her prejudice are not allowed." (*In re I.S., supra,* 67 Cal.App.5th at p. 927; accord, *In re Jessica C.* (2001) 93 Cal.App.4th 1027, 1041-1042 ["If a variance between pleading and proof . . . is so wide that it would, in effect, violate due process to allow the amendment, the court should, of course, refuse any such amendment."].) Accordingly, where the amended petition incorporates the same "basic allegation" as the original petition but changes only details of the conduct alleged, the amendment does not violate a parent's due process rights. (*In re Jessica C.,* at p. 1042 [amendment of allegation from "penetrated" to "touched" was not error because the "basic allegation was there, and any variance between 'touching' and 'penetrating' could not have misled [father] to his detriment"]; accord, *In re Andrew L.* (2011) 192 Cal.App.4th 683, 689 [juvenile court did not err in amending allegation in petition by striking diagnosis of subdural hematoma and leaving allegation of other detrimental

10

conditions that had been alleged and proved].) However, amendment is improper when "based on a factual and legal theory not at issue in the original petition." (*In re G.B.* (2018) 28 Cal.App.5th 475, 487; accord, *In re I.S.* at pp. 921, 929 [allegation mother failed to protect child from abuse could not properly be amended to allege emotional abuse, which "sought to establish jurisdiction over [child] under a different legal theory"].)

The juvenile court's amendment to the petition in this case did not incorporate the same basic allegation as the initial petition. The original petition alleged, pursuant to section 300, subdivision (b)(1), that Father's criminal history placed the children at risk of serious physical harm. The amended petition did not allege Father posed a safety risk to the children, and instead alleged he was unable to parent the children due to his incarceration and that he was unable to make an appropriate plan for their care. The amended allegation therefore seeks to establish jurisdiction under a completely different set of facts and a different legal theory.[5] Thus, Father had no notice he would be charged with failing to make an appropriate plan for his children. Accordingly, the court violated Father's due process rights by amending the petition as to Father without providing him notice and an opportunity to be heard.

---

[5] We also note that a parent's incarceration and inability to arrange care for a child is specifically enumerated as a basis for jurisdiction under section 300, subdivision (g), not subdivision (b)(1).

11

C.     *The Juvenile Court Also Violated Father's Statutory Right To Be Present at the Jurisdiction Hearing*

Penal Code section 2625, subdivision (d), states in part: "[A] petition to adjudge the child of a prisoner a dependent child of the court pursuant to subdivision (a), (b), (c), (d), (e), (f), (i), or (j) of Section 300 of the Welfare and Institutions Code may not be adjudicated without the physical presence of the prisoner or the prisoner's attorney, unless the court has before it a knowing waiver of the right of physical presence signed by the prisoner or an affidavit signed by the warden, superintendent, or other person in charge of the institution, or a designated representative stating that the prisoner has, by express statement or action, indicated an intent not to appear at the proceeding."  The Supreme Court in *In re Jesusa V.* (2004) 32 Cal.4th 588, 622 (*Jesusa V.*), held the word "or," as used in the phrase "physical presence of the prisoner or the prisoner's attorney," must be given its "conjunctive meaning."  Thus, the Court held "the statute requires *both* the prisoner *and* the prisoner's attorney be present."  (*Ibid.*)

The juvenile court violated Father's statutory right to be present at the jurisdiction hearing.  The court elected to conduct the jurisdiction proceeding in Father's absence despite the lack of a signed waiver by Father, a warden's affidavit indicating Father refused to attend (or affidavit from another individual specified under Penal Code section 2625, subdivision (d)), or the presence of counsel for Father.  This decision is particularly troubling given that counsel for the Department requested a continuance on Father's behalf because he had not submitted a signed waiver stating he did not wish to be present.

12

In addition, there is nothing in the record to support a finding it was necessary to proceed immediately to adjudicate the petition.  At the time of the jurisdiction hearing in April 2024 the children had been detained and placed with their maternal aunt and uncle for three months.  A continuance would have been possible while ensuring the disposition hearing took place within six months of the children's detention as required by section 352, subdivision (b).  (See *D.E. v. Superior Court* (2003) 111 Cal.App.4th 502, 513 ["[A]ny conflict between section 352 and Penal Code section 2625 must be resolved in favor of section 352 and its underlying policies. . . .  The parents' rights, whether to participate in critical dependency proceedings or to obtain necessary reunification services, cannot be used to delay the dependency proceedings when a statute provides an absolute maximum limit on the time within which a particular hearing must take place."].)  Further, because both parents were incarcerated, an additional continuance would not have delayed a potential return of the children to their parents' home.

The juvenile court was correct that a court must "give substantial weight to a minor's need for prompt resolution of his or her custody status" (§ 352, subd. (a)(1).), and further, "continuances are disfavored in dependency cases." (*In re Andrew M.* (2024) 102 Cal.App.5th 803, 810, fn. 4; see § 352, subd. (a)(1) & (2) ["a continuance shall not be granted that is contrary to the interest of the minor" and a ["[c]ontinuance shall be granted only upon a showing of good cause and only for that period of time shown to be necessary by the evidence presented at ta he hearing on the motion for the continuance"].)  But the Supreme Court has made clear that it is in the minor's best interests to have his or her parents present at the jurisdiction

13

hearing. As the Supreme Court explained in *In re Christopher L.* (2022) 12 Cal.5th 1063, 1076, "Not only are the stakes for the parent weighty, but also 'it is implicit in the juvenile dependency statutes that it is always in the best interests of a minor to have a dependency adjudication based upon all material facts and circumstances and the participation of all interested parties entitled to notice.' [Citation.] The right to counsel and participation not only protects the parent's interests but also ensures that the juvenile court has the fullest picture of the relevant facts before disposing of a dependency petition." Thus, the juvenile court's "failure . . . to appoint counsel or provide for Father's presence at the combined jurisdiction and disposition hearing" was "quite serious" (but not structural) error. (*Ibid*.)

In this case, where there was no evidence a continuance would have been contrary to the children's best interests other than their general interest in a prompt resolution, the juvenile court violated Father's statutory right to be present under Penal Code section 2625 at the jurisdiction hearing.

D.     *The Juvenile Court's Error in Failing To Advise Father of the Amended Allegations Was Prejudicial*

We are not aware of any published cases addressing whether the failure to provide a parent notice of an amended allegation is reviewed for state law error under *People v. Watson* (1956) 46 Cal.2d 818, 835 (*Watson*) or the more stringent standard for federal constitutional error under *Chapman v. California* (1967) 386 U.S. 18, 24 (*Chapman*). However, where a parent receives no notice of the petition, we review the due process violation under the *Chapman* standard. (See *In re J.H.* (2007) 158 Cal.App.4th 174, 183 [applying *Chapman* to due process violation based on failure to give father notice, but

14

finding error was harmless beyond a reasonable doubt]; *In re Justice P.* (2004) 123 Cal.App.4th 181, 193 ["In dependency proceedings, due process violations have been held subject to the harmless beyond a reasonable doubt standard of prejudice."]; but see *In re A.J.* (2019) 44 Cal.App.5th 652, 665-666 [declining to decide which standard applied but concluding lack of notice and denial of legal representation constituted prejudicial error under either *Watson* or *Chapman*].)[6] Given that the amended petition alleged entirely different allegations against Father in violation of his right to due process, the error is akin to a failure to provide any notice, which we review under *Chapman*. Accordingly, we reverse unless the error was harmless beyond a reasonable doubt. (*Chapman*, at p. 24; see *J.H.*, at p. 183.)

Father argues on appeal that the error in failing to give him notice of the amended allegations was prejudicial because had he been given notice of the allegations (and appeared at the jurisdiction hearing), he could have defended against the amended allegations in the petition. We agree. The record reflects that Father named several relatives who could care for the children, one of whom the children had lived with previously.

---

[6] By contrast, the Supreme Court in *Jesusa V., supra*, 32 Cal.4th at pages 624 to 625 held a state law harmless error analysis under *Watson* applies to a statutory violation of Penal Code section 2625. Because we conclude the juvenile court's failure to provide Father with notice of the amended allegations was prejudicial error under *Chapman*, requiring reversal, we do not reach whether the violation of his statutory right to be present at the jurisdiction hearing was prejudicial or whether his absence violated his due process rights. We likewise do not reach whether Father was denied a meaningful opportunity to qualify for presumed father status.

In addition, Father could have argued that at the time he was incarcerated in September 2024, the children were living with Mother and the family was stable. It was not until Father was incarcerated that Mother began to exhibit the behavior that brought the family to the attention of the Department. Further, Father was unaware that the children needed a plan of care until this proceeding was commenced. We recognize Father twice refused to be transported to court and allegedly said he did not want to attend the hearing because he "wasn't able to do shit about it." But we cannot say beyond a reasonable doubt that had Father been informed about the amended allegations (as to which he had a defense), he would not have appeared at the jurisdiction hearing and successfully defended against those allegations. Accordingly, the juvenile court's errors were not harmless beyond a reasonable doubt under *Chapman*.

## DISPOSITION

The jurisdiction finding and disposition order as to Father are reversed. The juvenile court is directed to conduct arraignment, jurisdiction, and disposition hearings with Father present unless, if Father is still incarcerated, Father provides a signed waiver, or the juvenile court receives an affidavit signed by the warden, superintendent, other person in charge of the institution, or designated representative, in accordance with

16

Penal Code section 2625, subdivision (d).  At these hearings, the court is to consider the family's current circumstances.


                                        FEUER, J.

We concur:


        MARTINEZ, P. J.


        STONE, J.

Filed 7/30/25

**CERTIFIED FOR PUBLICATION**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION SEVEN

| | |
|---|---|
| In re HUNTER V. et al., Persons Coming Under the Juvenile Court Law. | B339028 (Los Angeles County Super. Ct. No. 24CCJP00129) |
| LOS ANGELES COUNTY DEPARTMENT OF CHILDREN AND FAMILY SERVICES, <br><br> Plaintiff and Respondent, <br><br> v. <br><br> JUSTIN J., <br><br> Defendant and Appellant. | ORDER MODIFYING OPINION AND CERTIFYING OPINION FOR PUBLICATION (NO CHANGE IN APPELLATE JUDGMENT) |

THE COURT:

The above-entitled opinion filed on July 3, 2025 is modified as follows:

In the first paragraph on page 2, delete the last two sentences that read: "He further argues the errors were prejudicial.  We agree there was prejudicial error and reverse."

Following the first paragraph on page 2, add a second paragraph that reads:

> We agree with Father that the juvenile court violated his due process rights by failing to give him notice of the amended allegations in the petition that were based on a different set of facts and legal theory from the initial petition.  The court also violated Father's statutory right to be present at the jurisdiction hearing by holding the hearing without a written waiver from Father or affidavit from the prison warden or other designated individual under Penal Code section 2625, subdivision (d).  We evaluate the court's violation of Father's due process right to notice of the amended allegations for harmlessness under the standard for federal constitutional error set forth in *Chapman v. California* (1967) 386 U.S. 18, 24 (*Chapman*).  Because the error was not harmless beyond a reasonable doubt, we reverse.

On page 14, in the first paragraph under subheading D, replace the words "*Chapman v. California* (1967) 386 U.S. 18, 24 (*Chapman*)" with "*Chapman, supra*, 386 U.S. 18, 24," so the sentence reads:  "We are not aware of any published cases addressing whether the failure to provide a parent notice of an

2

amended allegation is reviewed for state law error under *People v. Watson* (1956) 46 Cal.2d 818, 835 (*Watson*) or the more stringent standard for federal constitutional error under *Chapman, supra*, 386 U.S. 18, 24."

The opinion was not certified for publication. It now appears the opinion meets the standards for publication specified in California Rules of Court, rule 8.1105(c).

IT IS HEREBY CERTIFIED that the opinion meets the standards for publication specified in California Rules of Court, rule 8.1105(c); and

ORDERED that the words "Not to be Published in the Official Reports" appearing on page 1 of said opinion be deleted and the opinion herein be published in the Official Reports.

There is no change in the appellate judgment.

---

MARTINEZ, P. J.          FEUER, J.          STONE, J.

3