Filed 10/19/21

# CERTIFIED FOR PUBLICATION

# IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

# SECOND APPELLATE DISTRICT

# DIVISION SEVEN

| | |
|---|---|
| In re COLE L. et al., Persons Coming Under the Juvenile Court Law. | B310319 |
| | (Los Angeles County Super. Ct. No. 20CCJP01807A, B) |
| LOS ANGELES COUNTY DEPARTMENT OF CHILDREN AND FAMILY SERVICES, | |
| Plaintiff and Respondent, | |
| v. | |
| ASHLEY L. et al., | |
| Defendants and Appellants. | |

APPEALS from orders of the Superior Court of Los Angeles County, Stephen C. Marpet, Juvenile Court Referee. Reversed.

Janelle B. Price, under appointment by the Court of Appeal, for Defendant and Appellant Ashley L.

Landon W. Villavaso, under appointment by the Court of Appeal, for Defendant and Appellant Wesley S.

Rodrigo A. Castro-Silva, County Counsel, Kim Nemoy, Assistant County Counsel, Navid Nakhjavani, Principal Deputy County Counsel, for Plaintiff and Respondent.

————————————

The Los Angeles County Department of Children and Family Services (Department) filed a dependency petition pursuant to Welfare and Institutions Code section 300, subdivisions (a) (serious physical harm inflicted nonaccidentally) and (b)(1) (failure to protect)[1] in March 2020 on behalf of now-five-year-old Cole L. and three-year-old Mckenzie L. based on an incident of domestic violence between Ashley L. and Wesley S., the children's mother and presumed father. At the jurisdiction hearing nine months later, the juvenile court sustained both counts, finding "there is a long history of these parents having some domestic violence issues." The court declared the children dependents of the juvenile court and ordered continued supervision by the Department while the children remained in Ashley's home.

Ashley and Wesley appeal the jurisdiction findings and disposition orders, contending the court improperly relied on unalleged acts in making its findings and there was insufficient evidence to support a finding the children were at substantial risk of serious physical harm by the time of the jurisdiction hearing. We agree with their latter argument and reverse.[2]

_____

[1] Statutory references are to this code unless otherwise stated.

[2] As reflected in minute orders from the juvenile court, on September 22, 2021 the Department filed a subsequent petition pursuant to section 342, apparently based on concerns regarding

2

**FACTUAL AND PROCEDURAL BACKGROUND**

1. *The March 20, 2020 Incident*

On March 20, 2020 officers from the Los Angeles Police Department (LAPD) responded to a call reporting "screaming, yelling, banging and slamming" at the family home.[3] When the officers arrived, they heard loud music. No one answered their initial requests to enter the residence. Ashley ultimately opened the door.

The home was in disarray, and the officers observed evidence of a domestic violence altercation: There was a broken phone on the floor; Ashley "had bruises and scratches"; Wesley "had scratches."

---

substance abuse by Ashley. On September 27, 2021 the court modified its earlier home of parent order, detained Cole and Mckenzie from Ashley and placed them with their maternal grandmother. A jurisdiction and disposition hearing on the section 342 petition is now scheduled for November 5, 2021. (We remind counsel they have a "duty to bring to the appellate court's attention postappellate rulings by the juvenile court that affect whether the appellate court can or should proceed to the merits." (*In re N.S.* (2016) 245 Cal.App.4th 53, 57.).) The unresolved subsequent petition does not moot Ashley's challenge to the juvenile court's initial exercise of dependency jurisdiction based on a finding Cole and Mckenzie were at a substantial risk of serious physical harm due to their parents' purportedly long history of domestic violence.

[3] Ashley, the two children and the maternal grandmother live in the three-bedroom apartment. Ashley sleeps in one bedroom; Cole in a second bedroom; and Mckenzie and the maternal grandmother in the third bedroom. According to Ashley, Wesley does not live with the family.

Both children were sleeping. Mckenzie was "drowsy and not alert" and could not be awakened; she appeared to the officers to be under the influence of something. Cole was also drowsy "but not as bad." Concerned for the children, the officers contacted the child protection hotline to report child endangerment. The children were taken to the hospital to be examined. Blood and urine tests for both children were negative. Neither child had any marks or bruises that would indicate abuse or neglect.

Ashley and Wesley were arrested for suspicion of injuring a child (Pen. Code, § 273a, subd. (a)), a charge that was not pursued. No domestic violence charges were filed.

Interviewed by a Department social worker the following day while still in a jail holding cell, Ashley explained she had been asleep when the officers arrived at the home. Earlier, she had discovered Wesley—her boyfriend and the father of Cole and Mckenzie—was unfaithful to her, and the two of them had a loud argument. Ashley then walked away and lay down where the children were already napping. Ashley denied there had been a physical altercation and said there was no history of domestic violence between her and Wesley, although she acknowledged they had had "a couple of arguments." Ashley said she and Wesley do not live together, he is not at the home often, and "we have gone as long as nearly a year without actually seeing each other." She said there had been one prior occasion when the police had been called, but she had asked Wesley to leave and he did.

The social worker also interviewed the LAPD officer who initially responded to the domestic disturbance call. The officer explained she was concerned the children had been exposed to

4

domestic violence and they appeared to be under the influence of alcohol. Consistent with the initial report to the Department, the officer stated "mother and father had scratches and bruises, which were indicative of a domestic violence altercation."

2. *The Children's Detention and Release to Ashley*

The children were temporarily removed from their parents on March 26, 2020 pursuant to a warrant issued on March 24, 2020 and placed with their maternal grandmother, Donnamarie F. On March 30, 2020 the Department filed a dependency petition, alleging in identical language in counts under section 300, subdivisions (a) and (b)(1), "On 03/20/2020, the children, Cole A. L[.] and Mckenzie L[.]'s mother, Ashley F. L[.,] and father, Wesley [S.,] engaged in a violent altercation in the children's home in which the mother and the father sustained scratch marks and bruises to their bodies. Such violent conduct on the part of the parents endangers the children's physical health and safety, and places the children at risk of serious physical harm, damage and danger."

The Department's March 30, 2020 detention report, in addition to describing the March 20, 2020 incident as reported by the LAPD and the social worker's March 21, 2020 interview with Ashley, provided details concerning dependency proceedings in 2013 involving Ashley's older daughter, Maya. Maya had been declared a dependent child of the juvenile court based on a sustained petition alleging Ashley had an unresolved history of alcohol abuse and had been under the influence of alcohol while the child was in her care. On February 11, 2014 the court terminated its jurisdiction and issued a juvenile court custody order awarding sole legal and physical custody of Maya to the child's father, Aaron H.

In her interview with the Department's social worker, Ashley stated she did not use drugs and did not have a history of substance abuse, but acknowledged her history with the Department and reported she had a driving-under-the-influence incident in her past. She said she suffers from anxiety and sometimes depression and is taking medication (sertraline) to manage her mental health.

Following his arrest by the LAPD on March 20, 2020, Wesley was transferred to the custody of the San Bernardino County Sheriff on an outstanding bench warrant. He was not available to be interviewed for the detention report. Cole and Mckenzie were too young to make meaningful statements. However, the social worker observed them to be comfortable and happy with Ashley.

Donnamarie lives with Ashley and the children. In her initial interview Donnamarie said she had not been at home during the incident leading to LAPD's domestic disturbance response and did not know what had happened. She told the social worker she and Ashley had an argument several years earlier. After Donnamarie "vented" about the argument to her physician, he called Adult Protective Services, which contacted Donnamarie several times to make sure she was not a victim of abuse. Donnamarie explained the argument was verbal only and she was not a victim. However, a Department incident report based on an August 21, 2018 referral indicated in February 2018 Ashley had repeatedly hit Donnamarie's back and head while Ashley was holding Cole. Donnamarie pepper-sprayed Ashley and left the home. The matter was closed as "inconclusive" on the recommendation of the social worker involved, based on her observation that Ashley and Donnamarie "have become very

6

cooperat[ive] out of interest of Cole and Mckenzie.  Neighbor, medical, school and mother's psychiatrist stated there are no child safety concerns."

The detention report also summarized a November 2013 referral that was closed as "unfounded" following allegations of physical abuse of Maya by her father, as well as several other inconclusive and unfounded referrals involving Maya.

In the section of the report concerning the need, if any, for continued detention, the social worker wrote, "According to mother, and maternal grandmother, father has an unresolved history of perpetrating domestic violence via arguments against mother when consuming alcohol which is reportedly provoking father to become verbally argumentative with mother."

At the detention hearing on April 2, 2020, Wesley, who was not present, was found to be the presumed father of both children.  The court detained the children from Wesley and, over the objection of the Department, released them to Ashley on condition that Ashley continue to live with the maternal grandmother, drug test and take any prescribed medication.  Wesley was permitted monitored visitation, which was not to occur at Ashley's home.

At the hearing Ashley requested a restraining order to protect herself, Cole and Mckenzie from Wesley based on Wesley's "erratic behavior."  The court issued a temporary restraining order; but, after numerous continuances, no final order was issued due to Ashley's inability to serve Wesley.[4]

---

[4] Wesley was released from custody in San Bernardino County on May 15, 2020, but his whereabouts remained unknown to Ashley and the Department until he made his first appearance in the case on January 22, 2021.

3. *The Jurisdiction/Disposition Hearing*

The combined jurisdiction and disposition hearing, originally scheduled for June 4, 2020, was continued multiple times and finally held on January 6, 2021. In its report for the original hearing, filed June 3, 2020, the Department included excerpts of a further interview with Ashley, who again insisted there had not been a physical altercation on March 20, 2020. Ashley described the incident as "a verbal altercation dealing with fidelity." She explained, "At one point I had his cell phone and I asked him to delete from Facebook a girl that he was cheating with. He refused to do so. I had the phone and tried to do it myself, and he grabbed it. He refused to delete the girl. He admitted to cheating. I went in the room where the children were napping and [lay] down as well. He stayed in the front and watched TV. Next thing I know there were 99 cops at my house." The report left a blank space for the results of Ashley's weekly drug tests.

In a follow-up interview Donnamarie, who had previously said she had not been at the home during the incident, told the social worker, "It was not an altercation to the extent that the police made it out to be. They were having an argument over a phone. Ashley was trying to take the phone away from Wes . . . . [T]hey were going back and forth and some pushing was going on. The children were asleep in another room, not even in their presence." She described the argument as "a one-time incident." Wesley, who was released from San Bernardino County jail in mid-May 2020, remained unavailable to the Department for an interview.

In the assessment section of the jurisdiction/disposition report, the social worker wrote that Ashley had "admitted being

8

in a pushing altercation with Father Wesley S[.] resulting in scratches on both Mother and Father." A social worker who visited the apartment where Ashley, Donnamarie and the children were living "observed the home to be appropriately clean and organized. There were no indications of substance use or abuse, as CSW did not observe any drug paraphernalia or any indicators of alcohol use in the home."

The Department recommended the court sustain the petition, with the children remaining in Ashley's care if she continued to live with Donnamarie. Explaining the recommendation, the report stated, "It is evident that Mother Ashley L[.] and Father Wesley S[.] have a history of unresolved domestic violence disputes. Mother acknowledged that Mother and Father have verbal arguments in the home where the children reside which have escalated into physical altercations. However, Mother minimizes the severity of the verbal arguments between herself and Father and deflects responsibility for their actions onto others and blames the Los Angeles Police Department for taking the situation out of proportion. . . . It is apparent that the parents Ashley L[.] and Wesley S[.] are not able to effectively communicate with each other and address their relationship conflict which in turn affects the children."

A status review report filed August 21, 2020 stated a new, general neglect referral had been in June when Mckenzie was found outside on a neighbor's lawn. The referral was closed as "inconclusive." Ashley explained she had fallen into a deep sleep and believed Cole had opened the safety latch on the apartment door, allowing Mckenzie to wander outside. Ashley also explained that she had not enrolled in a parenting course, notwithstanding her attorney's advice to be proactive and do so,

9

because there were a variety of different programs, all of which cost money. She decided she should wait to learn what the court would actually order her to do. The report indicated Ashley had 12 negative drug tests since the prior report.

An October 29, 2020 last minute information report stated Ashley continued to provide the children with a safe environment. The report indicated Ashley had 11 negative drug tests and one no-show since the prior report.

At the combined jurisdiction/disposition hearing on January 6, 2021, the court found proper notice had been provided to Wesley, who was not present, based on the Department's completed due diligence efforts to locate him. After the court admitted into evidence the Department's reports with exhibits,[5] all parties rested; and the case proceeded to argument.

The children's counsel asked the court to find the allegation true, although suggesting pleading under both subdivisions (a) and (b) was duplicative. Counsel described the March 20, 2020 incident as involving "pushing and shoving" that resulted in scratches on Ashley's arm and some bruises, "so, clearly, it was [a] substantially serious domestic violence incident." Counsel also emphasized that Ashley had not yet participated in services. Ashley's counsel asked the court to dismiss the petition, noting the case had been open for nearly 10 months without any issues regarding the children's safety. Counsel for the Department

---

[5] The Department's exhibit list and the court's order admitting those exhibits reflect a last minute information report dated January 6, 2021. That report is not included in the clerk's transcript. A reference during argument at the January 6, 2021 hearing indicated it related, at least in part, to the Department's efforts to locate Wesley.

argued the subdivision (a) and (b) counts were not duplicative, asserting, "[T]he child was clearly within distance of physical altercation." Counsel also argued there had been "previous incidents of domestic violence between the two."

The court sustained the petition, stating, "The court's read and considered the reports before the court and listened to the arguments of counsel. I'm satisfied there is a long history of these parents having some domestic violence issues, and I am going to sustain the petition as pled (a)(1) and (b)(1) finding by a preponderance of the evidence." The children were removed from Wesley and placed with Ashley under the Department's supervision and on condition she reside with the maternal grandmother. Ashley was ordered to participate in a domestic violence support group program for victims and submit to random drug testing once or twice per month. Family enhancement services, including a 52-week domestic violence class for perpetrators, were ordered for Wesley.

Wesley made his first appearance in the proceedings on January 22, 2021. The court again ordered enhancement services for Wesley to include domestic violence counseling, individual counseling and random drug testing. His visitation with the children was to be monitored.

Ashley filed a notice of appeal from the January 6, 2021 jurisdiction findings and disposition orders. Wesley filed a notice of appeal from the January 22, 2021 orders and has asked that we liberally construe his notice of appeal to encompass the January 6, 2021 findings and order, at least some of which directly affect him. We grant that request. (See generally Cal.

11

Rules of Court, rule 8.100(a)(2); *K.J. v. Los Angeles Unified School Dist.* (2020) 8 Cal.5th 875, 882-885.)[6]

## DISCUSSION

### 1. *Governing Law and Standard of Review*

The purpose of section 300 "is to provide maximum safety and protection for children who are currently being physically, sexually, or emotionally abused, being neglected, or being exploited, and to ensure the safety, protection, and physical and emotional well-being of children who are at risk of that harm." (§ 300.2; see *In re A.F.* (2016) 3 Cal.App.5th 283, 289; *In re Giovanni F.* (2010) 184 Cal.App.4th 594, 599.)

Section 300, subdivision (a), provides that jurisdiction may be assumed if the child has suffered, or there is a substantial risk the child will suffer, serious physical harm inflicted nonaccidentally by the child's parent or guardian. "Nonaccidental" generally means a parent or guardian "acted intentionally or willfully." (*In re R.T.* (2017) 3 Cal.5th 622, 629.)

Section 300, subdivision (b)(1), allows a child to be adjudged a dependent of the juvenile court when "[t]he child has suffered, or there is a substantial risk that the child will suffer, serious physical harm or illness, as a result of the failure or inability of his or her parent or guardian to adequately supervise or protect the child, or the willful or negligent failure of the child's parent or guardian to adequately supervise or protect the child from the conduct of a custodian with whom the child has

---

[6] In his appellate brief Wesley joins Ashley's challenge to the sufficiency of the evidence to support the jurisdiction findings. The Department does not contend jurisdiction over the children is properly based on Wesley's conduct alone.

been left."  A jurisdiction finding under section 300, subdivision (b)(1), requires the Department to prove three elements:  (1) the parent's or guardian's neglectful conduct or failure or inability to protect the child; (2) causation; and (3) serious physical harm or illness or a substantial risk of serious physical harm or illness.  (*In re L.W.* (2019) 32 Cal.App.5th 840, 848; *In re Joaquin C.* (2017) 15 Cal.App.5th 537, 561; see *In re R.T.*, *supra*, 3 Cal.5th at p. 624 ["section 300(b)(1) authorizes dependency jurisdiction without a finding that a parent is at fault or blameworthy for her failure or inability to supervise or protect her child"].)

Although section 300 requires proof the child is subject to the defined risk of harm at the time of the jurisdiction hearing (*In re J.N.* (2021) 62 Cal.App.5th 767, 775; *In re D.L.* (2018) 22 Cal.App.5th 1142, 1146), the court need not wait until a child is seriously abused or injured to assume jurisdiction and take steps necessary to protect the child.  (*In re Kadence P.* (2015) 241 Cal.App.4th 1376, 1383; *In re N.M.* (2011) 197 Cal.App.4th 159, 165.)  The court may consider past events in deciding whether a child presently needs the court's protection.  (*In re J.N.*, at p. 775; *In re Christopher R.* (2014) 225 Cal.App.4th 1210, 1215-1216; *In re N.M.*, at p. 165.)  A parent's "'[p]ast conduct may be probative of current conditions' if there is reason to believe that the conduct will continue."  (*In re S.O.* (2002) 103 Cal.App.4th 453, 461; accord, *In Kadence P.*, at p. 1384; see *In re J.N.*, at p. 775 ["DCFS must establish a nexus between the parent's past conduct and the current risk of harm"].)  "To establish a defined risk of harm at the time of the hearing, there 'must be some reason beyond mere speculation to believe the alleged conduct will recur.'"  (*In re D.L.*, at p. 1146.)

"'In reviewing a challenge to the sufficiency of the evidence supporting the jurisdictional findings and disposition, we determine if substantial evidence, contradicted or uncontradicted, supports them. "In making this determination, we draw all reasonable inferences from the evidence to support the findings and orders of the dependency court; we review the record in the light most favorable to the court's determinations; and we note that issues of fact and credibility are the province of the trial court." [Citation.] "We do not reweigh the evidence or exercise independent judgment, but merely determine if there are sufficient facts to support the findings of the trial court.""'" (*In re I.J.* (2013) 56 Cal.4th 766, 773; see *In re I.C.* (2018) 4 Cal.5th 869, 892.) However, "[s]ubstantial evidence is not synonymous with any evidence. [Citation.] To be substantial, the evidence must be of ponderable legal significance and must be reasonable in nature, credible, and of solid value." (*In re M.S.* (2019) 41 Cal.App.5th 568, 580; accord, *In re J.A.* (2020) 47 Cal.App.5th 1036, 1046 [while substantial evidence may consist of inferences, any inferences must rest on the evidence; inferences based on speculation or conjecture cannot support a finding].)

2. *Substantial Evidence Does Not Support the Jurisdiction Finding Under Section 300, Subdivision (a)*

    a. *Domestic violence between parents, without more, does not support a jurisdiction finding under section 300, subdivision (a)*

Exposure to domestic violence may serve as the basis for dependency jurisdiction. (*In re R.C.* (2012) 210 Cal.App.4th 930, 941.) ""Both common sense and expert opinion indicate spousal abuse is detrimental to children."" (*Id.* at p. 942; see *In re S.O.*, *supra*, 103 Cal.App.4th at pp. 460-461 ["'domestic violence in the same household where children are living *is* neglect; it is a failure to protect [them] from the substantial risk of encountering the violence and suffering serious physical harm or illness from it'"]; see also *In re T.V.* (2013) 217 Cal.App.4th 126, 135 ["[e]ven though [the child] had not been physically harmed, the cycle of violence between the parents constituted a failure to protect her"].)

Under certain circumstances incidents of domestic violence between a child's parents, if they occur in the child's immediate presence, may support a jurisdiction finding under section 300, subdivision (a). (See *In re Giovanni F.*, *supra*, 184 Cal.App.4th at pp. 598-599.) For example, if a father strikes an infant's mother while she is holding the child or an older child intervenes during a fight to protect her mother from her father's abuse, the risk of harm to the child may be properly viewed as nonaccidental. (See, e.g., *In re M.M.* (2015) 240 Cal.App.4th 703, 720 ["the record shows that minor not only was present during the December 2 domestic violence incident between mother and father, but that he was 'at their feet' during most of the incident and that during some of the incident, father was actually holding minor while

15

mother was hitting father and while father was choking mother"].)

The somewhat more common potential for accidental injury during parents' physically violent fights in the presence of bystander children, however, constitutes a failure or inability to protect the child, creating the potential for dependency jurisdiction under section 300, subdivision (b)(1) (and possibly section 300, subdivision (c)), but not subdivision (a). (Cf. *In re T.V.*, *supra*, 217 Cal.App.4th at p. 134 [exposing children to recurring domestic violence may be sufficient to establish jurisdiction under section 300, subdivision (b)]; *In re Daisy H.* (2011) 192 Cal.App.4th 713, 717 [same].) Acts of domestic violence themselves, of course, are intentional. But a finding under section 300, subdivision (a), requires evidence of a risk of physical injury "inflicted nonaccidentally upon the child." An unintended injury to a bystander child that results from an intentional act directed at another—for example, due to an object thrown by one parent at another during an argument—does not satisfy that statutory requirement.[7]

---

[7] We acknowledge several courts of appeal have disagreed with this analysis, holding, because domestic abuse is nonaccidental, an unintended injury to a child as a consequence of his or her exposure to acts of violence is a proper basis for a finding under section 300, subdivision (a). (E.g., *In re Nathan E.* (2021) 61 Cal.App.5th 114, 121-122; *In re Giovanni F.*, *supra*, 184 Cal.App.4th at p. 599.) Those decisions fail to recognize the fundamental difference between a failure to protect a child from the unintended consequences of intentional behavior and the deliberate (that is, "nonaccidental") infliction of injuries upon the child, the distinction between subdivisions (a) and (b).

b. *The record is devoid of evidence of a substantial risk of nonaccidental injury to the children*

The Department's section 300 petition did not allege the March 20, 2020 altercation between Ashley and Wesley occurred in the presence of the children, describing it as having taken place "in the children's home."  Similarly, in a carefully phrased statement in the jurisdiction/disposition report, the Department refers to violent altercations "in the presence or the home of the children."

As discussed, domestic violence between parents is concerning wherever it occurs; but, the deputy county counsel's assertion to the court notwithstanding,[8] there was no evidence any violence took place in the presence of Cole or Mckenzie, let alone under circumstances that could support a finding of a substantial risk that either child would suffer serious physical harm inflicted nonaccidentally.  To the contrary, it was undisputed the children were asleep in a bedroom, away from their parents, during the single domestic disturbance for which there was any concrete evidence.  This evidence was insufficient to support the court's subdivision (a) jurisdiction finding.

---

[8]     The Department's suggestion that, by failing to object, Ashley forfeited on appeal any argument concerning the accuracy of its lawyer's statement misses the point.  As troubling as counsel's misrepresentation would be if knowingly made (see generally Rules Prof. Conduct, rule 3.3(a)(1)), the issue before us is whether the evidence in the record supports the juvenile court's jurisdiction findings, not whether counsel's argument, if correct, would.

17

### 3. *Substantial Evidence Does Not Support the Jurisdiction Finding Under Section 300, Subdivision (b)(1)*

The evidence in the record was certainly sufficient for the court to find the March 20, 2020 argument between Ashley and Wesley involved pushing that resulted in scratches on both of them—that is, it was an act of domestic violence.[9] But the juvenile court did not find that single incident alone created a substantial risk of serious physical harm to Cole and Mckenzie, relying instead on the "long history of these parents having some domestic violence issues."

Putting aside whether it would be proper to sustain the petition based on an unalleged history of domestic violence (see, e.g., *In re Wilford J.* (2005) 131 Cal.App.4th 742, 751 ["a parent whose child may be found subject to the dependency jurisdiction of the court enjoys a due process right to be informed of the nature of the hearing, as well as the allegations upon which the deprivation of custody is predicated"]; see also *In re Andrew S.* (2016) 2 Cal.App.5th 536, 544; *In re Justice P.* (2004) 123 Cal.App.4th 181, 188),[10] there was no evidence in the record

---

[9] The responding LAPD officer also indicated that Ashley had bruises on her face. Donnamarie suggested what the officer observed were marks from Ashley's skin condition. The social worker who interviewed Ashley on March 21, 2020 did not mention any bruising in her report.

[10] A juvenile court may amend a dependency petition to conform to the evidence received at the jurisdiction hearing to remedy immaterial variances between the petition and proof. (Welf. & Inst. Code, § 348; Code Civ. Proc., § 470.) However, material amendments that mislead a party to his or her prejudice

18

that Ashley and Wesley had engaged in multiple acts of domestic violence over an extended time. Ashley denied such a history, as did Donnamarie. Although Ashley acknowledged one prior police response to a call to the home, she denied there had been any violence and said Wesley complied when she asked him to leave. No police report or other evidence from that incident was presented by the Department, nor was there evidence of any other incidents of domestic violence between Ashley and Wesley.

The apparent basis for the court's finding, as the Department concedes, is the social worker's statement in the jurisdiction/disposition report that Ashley had acknowledged she and Wesley "have verbal arguments in the home where the children reside which have escalated into physical altercations." Yet the same social worker's detailed description of her two interviews with Ashley, complete with extensive quotations, included no such admission. To the contrary, according to the interview summaries, Ashley consistently denied having any physical altercations with Wesley. Under these circumstances, we do not consider the social worker's isolated comment to be sufficient evidence to support the finding. (See *In re I.C.*, *supra*, 4 Cal.5th at p. 892 ["[i]t is well settled that the [substantial evidence] standard is not satisfied simply by pointing to "'isolated evidence torn from the context of the whole record'""]; cf. *In re J.A.*, *supra*, 47 Cal.App.5th at p. 1046; *In re David M.* (2005) 134 Cal.App.4th 822, 828.)[11]

_____

are not allowed. (Code Civ. Proc., §§ 469, 470; *In re Andrew L.* (2011) 192 Cal.App.4th 683, 689.)

[11] A challenge to the sufficiency of the evidence on an issue as to which the Department has the burden of proof is not forfeited

Recognizing the gap between the record and the juvenile court's stated basis for sustaining the petition, the Department argues the physical altercation between Ashley and Wesley on March 20, 2020, coupled with Ashley's denial of the incident and refusal to participate in services, warranted the exercise of juvenile court jurisdiction.[12] It urges us to uphold the January 6, 2021 findings and order "'regardless of the correctness of the grounds upon which the court reached its conclusion,'" quoting dictum from *In re Jonathan B.* (1992) 5 Cal.App.4th 873, 876. In that case, however, the court of appeal held a reviewing court could affirm the juvenile court's order sustaining a dependency petition if any of the several grounds relied upon by the juvenile court supported the order (*id.* at p. 875), not that the jurisdiction

---

by a parent's failure to object in the juvenile court. (See, e.g., *In re Joshua G.* (2005) 129 Cal.App.4th 189, 200, fn. 12; *In re Brian P.* (2002) 99 Cal.App.4th 616, 623.) Thus, contrary to the Department's argument, we are not precluded by the absence of an objection to the social worker's statement from considering that it was inconsistent with the detailed recitation in the same report of Ashley's consistent denials of any physical violence. As discussed to be "substantial," evidence must be reasonable and credible. (See *In re M.S.*, *supra*, 41 Cal.App.5th at p. 580.)

[12] In its respondent's brief the Department discusses Ashley's child welfare history involving her older daughter, as well as more recent referrals determined to be unfounded or inconclusive. While apparently included to color our view of Ashley's parenting ability, the Department—quite properly—does not contend any of those events should be considered in determining whether domestic violence between Ashley and Wesley supports jurisdiction under section 300, subdivision (b)(1).

finding could be affirmed on a ground not articulated by the court.

To be sure, ""'a ruling or decision, itself correct in laws, will not be disturbed on appeal merely because given for the wrong reason.'"" (*People v. Brown* (2004) 33 Cal.4th 892, 901.)  But here the juvenile court's decision was that jurisdiction was proper based on Ashley and Wesley's purported long history of domestic violence; it did not determine jurisdiction was proper based on the circumstances identified by the Department.  The Department is thus asking us not to affirm a decision by the court that is by law correct on different grounds but rather to make an entirely new decision based on a factual finding—that Cole and Mckenzie were at substantial risk of serious harm based on those circumstances—not made by the juvenile court.  That decision and finding were for the juvenile court in the first instance, not this court.  (E.g., *In re Laura F.* (1983) 33 Cal.3d 826, 833 ["our task is not to reweigh the evidence or to express an independent judgment thereon but merely to decide whether there is sufficient evidence to support the findings of the trial court"].)

Even were we to accept the Department's premise, however, its position on appeal has several serious flaws.  First, any domestic dispute that escalates into the use of physical force is a serious matter, appropriately addressed by the juvenile court.  Nonetheless, evaluation of the risk of physical harm to Cole and Mckenzie from their parents' argument must recognize that the incident involved, at most, some pushing and grabbing for Wesley's cell phone and took place outside the presence of the children.  Whatever emotional toll such an argument may take on

21

children, the physical danger to Cole and Mckenzie from this event, the focus of section 300, subdivision (b), was minimal.

Second, the issue at the jurisdiction hearing was not whether the children were at risk on March 20, 2020 but whether a significant risk of physical injury existed in January 2021. As discussed, to make that finding requires evidence the earlier threatening conduct will recur. (See *In re C.V.* (2017) 15 Cal.App.5th 566, 572 ["[j]urisdiction 'may not be based on a single episode of endangering conduct in the absence of evidence that such conduct is likely to reoccur'"]; see also *Georgeanne G. v. Superior Court* (2020) 53 Cal.App.5th 856, 869 ["a finding of risk of harm to a child must be based on more than conjecture or a theoretical concern"].) The record contains no such evidence. The children, released to Ashley by the court at the detention hearing, had been living safely with her for more than nine months. During that period, there had been no further acts of domestic violence; indeed, there had been no contact at all between Ashley and Wesley, whose whereabouts remained unknown. Moreover, although Ashley insisted no physical altercation had taken place, she recognized Wesley's potential danger and proactively sought a restraining order to protect herself and the children.

Finally, we do not agree with the Department's argument that Ashley's insistence the episode on March 20, 2020 did not become physical and her "refusal" to participate in services constitute substantial evidence that physical violence between her and Wesley was likely to recur.[13] While "[o]ne cannot correct

---

[13] Curiously, when attempting to justify a finding that the altercation involved violence, the Department relies on its social

a problem one fails to acknowledge" (*In re Gabriel K.* (2012) 203 Cal.App.4th 188, 197; see *In re V.L.* (2020) 54 Cal.App.5th 147, 156), Ashley's immediate request for a temporary restraining order, granted at the detention hearing on April 2, 2020, although predicated on Wesley's "erratic behavior," rather than domestic violence, belies any suggestion she lacked sufficient self-awareness or concern about Wesley's conduct to be able to protect her children.

The Department's assertion that Ashley refused to participate in services is similarly misplaced. No services were ordered prior to the jurisdiction hearing other than that Ashley drug test and take any medication prescribed for her. She complied with those orders. Her decision to defer participating in counseling or other services because she did not know what the court would order, while perhaps not prudent, did not constitute a "refusal," and, in any event, is not evidence that domestic violence with Wesley was likely to recur. More is required to support a jurisdiction finding. (See *In re J.N.*, *supra*, 62 Cal.App.5th at p. 776 ["DCFS cannot use such generalities to satisfy its burden of proving an '*identified, specific hazard* in the child's environment' that poses a substantial risk of serious physical harm to him"].)

---

worker's statement (unsupported as it may be) that Ashley admitted some pushing had taken place; yet when it turns to arguing the children remain at risk, it contends Ashley has consistently denied any physical violence occurred.

## DISPOSITION

The juvenile court's jurisdiction findings and disposition orders are reversed.  The juvenile court is directed to dismiss the dependency petition.


PERLUSS, P. J.


We concur:


SEGAL, J.


FEUER, J.